38 297
s39 521

HARRY SINGLETON, PLAINTIFF IN ERROR, VS. THE
STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The twelfth section of Article IV of the Constitution of 1885
conferred power upon the Governor, Justices of the Supreme
Court and Attorney-General, or a major part of them, of
whom the Governor shall be one, to permanently remit fines
and forfeitures, to commute punishment and grant pardons
after conviction, in all cases except treason and impeachment,
subject to such regulations as may be prescribed by law rela-
tive to the manner of applying for pardons, and the pardoning
power thus conferred is exclusive, and can not be exercised by
the Legislature.

2. By the amendment of section 12, Article 4, adopted this year,
the Secretary of State, Comptroller and Commissioner of Ag-
riculture take the places of the Justices of the Supreme Court,
as members of the board of pardons.

3. A full pardon of an offense not only blots out the crime com-
mitted, but removes all punishment and disabilities resulting
from the conviction. When extended to a convict in prison,
it relieves him and removes his disabilities, and when granted
after his time of imprisonment has expired, it removes all that
is left of the consequences of conviction—his disabilities.

4. By statute the conviction of the crime of larceny in the courts
of thie State disqualifies the convict as a witness, and his par-
don for this offense has the effect to restore his competency to
testify as a witness.

5. An act of the Legislature provided that a party who had been
convicted of the crime of larceny should be restored to civil
rights: *Held*, Without deciding whether a restoration to civil
rights would include the restoration of competency as a wit-
ness, lost by reason of the conviction of the crime, that before
the party could testify it must have such effect, and so con-
strued, it was not competent for the Legislature to so enact.

6. An accused is entitled to be tried by an impartial jury, and when
it is made to appear to the trial judge that a fair and impar-
tial trial can not be had in the county where the offense was
committed, he should direct that the accused be tried in an-
other county. This is a matter left largely to the discretion of

the trial court, and its ruling on such matters will not be disturbed unless it appear from the facts presented that the court acted unfairly and committed a palpable abuse of sound discretion.

Writ of Error to the Circuit Court for Hillsborough county.

The facts are stated in the opinion.

*Wall & Stevens*, for Plaintiff in Error.

*W. B. Lamar*, Attorney-General, for the State.

MABRY, C. J.:

The plaintiff in error was indicted, tried and convicted of murder in the first degree, and from the sentence of the court imposing the death penalty a writ of error has been sued out.

An error was committed during the progress of the trial of the cause that will necessitate a reversal of the judgment rendered against the accused. The State introduced as a witness one Howard Bishop who testified to material and damaging facts against the accused. It is not deemed necessary to set out the testimony of the witness, as there can be no doubt that it bore directly upon defendant's guilt, was calculated to influence the jury, and, if improperly admitted, was harmful and can not be considered otherwise than as reversible error. An objection was made to Bishop's testifying on the ground that he had been convicted in a court in this State of the crime of larceny, and under the statute he was not a competent witness. It was conceded that the witness, Howard Bishop, had been convicted at the Spring term, 1889, of the Circuit Court for Marion county, of the crime of larceny, and

was sentenced to six months' imprisonment in the jail of said county; but to remove and obviate the objection on account of this conviction the State offered in evidence and read to the court the act of 1895, Chapter 4457, entitled "an act to restore Howard Bishop, late of Marion county, Florida, to civil rights." In the preamble to this act the conviction and sentence of Bishop, in the Marion county Circuit Court, for the larceny of a watch is recited; also that about a year subsequent to the conviction it was established to the satisfaction of the party to whom the watch belonged that Bishop was not guilty of the crime for which he had been convicted, and for the last five years he had lived in the city of Tampa, served on the police force of the city, and had conducted himself uprightly as a man and officer. The provision of the act is "that the said Howard Bishop be and is hereby restored to civil rights." Section 1096 of the Revised Statutes provides that persons convicted in any court in this State of murder, perjury, piracy, forgery, larceny, robbery, arson, sodomy, or buggery shall not be competent witnesses. The Constitution provides (sec. 11, Art. IV) that "the Governor shall have power to suspend the collection of fines and forfeitures, and grant reprieves for a period not exceeding sixty days, for all offenses, except in cases of impeachment. In cases of conviction for treason he shall have power to suspend the execution of sentence until the case shall be reported to the Legislature at its next session, when the Legislature shall either pardon, direct the execution of the sentence, or grant a further reprieve; and if the Legislature shall fail or refuse to make disposition of such case, the sentence shall be enforced at such time and place as the Governor may direct." Provision is

also made in the section for reports to the Legislature by the Governor of the fines or forfeitures remitted, or reprieves, pardons or commutations granted. The twelfth section of the same article, as it stood when the act of 1895, *supra*, was passed, provided that "the Governor, Justices of the Supreme Court, and Attorney-General, or a major part of them, of whom the Governor shall be one, may, upon such conditions and with such limitations and restrictions as they may deem proper, remit fines and forfeitures, commute punishment and grant pardons after conviction, in all cases except treason and impeachment, subject to such regulations as may be prescribed by law relative to the manner of applying for pardons." Under the amendment to this section, adoped this year, the Secretary of State, Comptroller, and Commissioner of Agriculture take the places of the Justices of the Supreme Court. Article II of the Constitution divides the powers of government into three departments—Legislative, Executive, and Judicial—and provides that no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by the Constitution. In the distribution of the powers of government the framers of our Constitution had the right to lodge the pardoning power where they saw proper in the departments of government. We know from judicial history that the pardoning power was a part of the royal prerogative in England, and Chief-Justice Marshall, in speaking for the court in United States vs. Wilson, 7 Peters, 150, says: "As this power has been exercised from time immemorial by the executive of that nation, whose language is our language, and to whose judicial institutions ours bear a close resem-

blance, we adopt their principles respecting the operation and effect of a pardon, and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it.'' As to the exercise of the power under our system of government we must look to our organic law, the Constitution. By the eleventh section of Article IV the Governor alone is given power to suspend the collection of fines and forfeitures, and grant reprieves for a period not exceeding sixty days, for all offenses, except in cases of impeachment, and in cases of conviction for treason the Legislature can pardon on the suspension of the sentence by the Governor. The twelfth section of the article, as amended, confers power upon the Governor, Secretary of State, Comptroller, Commissioner of Agriculture, and Attorney-General to permanently remit fines and forfeitures, commute punishment and grant pardons after conviction, in all cases except treason and impeachment, subject to such regulations as may be prescribed by law relative to the manner of applying for pardons, and we are of the opinion that the pardoning power after conviction, conferred by this section upon the board of pardons designated, is exclusive, and that the Legislature can not exercise such power. The Constitution of Missouri vested the pardoning power in the Governor and it was decided in State vs. Sloss, 25 Mo. 291, S. C. 69 Am. Dec. 467, that such power belonged exclusively to the executive department, and could not be exercised by the Legislature. The Constitution of the United States confers upon the President the power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment, and Judge Story says (on the Constitution, vol. 2, sec. 1504) that ''no law can

abridge the constitutional powers of the executive department, or interrupt its rights to interpose by pardon in such cases." It was held in *Ex parte* Garland, 4 Wall. 333, that the pardoning power conferred on the President was not subject to legislative control. In this case it is said, in reference to the effect of a pardon, that it "reaches both the punishment prescribed for the offense, and the guilt of the offender. When the pardon is full, it remits the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." This has been approved in an opinion of the Justices of this court (Advisory *Opinion to Governor*, 14 Fla. 318). It is settled law that the pardon of an offense not only blots out the crime committed, but removes all disabilities resulting from the conviction. "Imprisonment and hard labor are not the only punishments which the law inflicts upon those who violate its commands. Besides these, are disabilities which are the consequences of conviction, and which remain after incarceration has ceased. A pardon is supposed to be granted to one who has been improperly convicted, or who has sufficiently expiated his offense. If it was only efficacious when the party was in duress, its effects would only be a half-way relief. The doctrine now well recognized upon this subject, is that a pardon gives to the person in whose favor it is granted a new character and makes of him a new man. When extended to him in prison, it relieves him and removes his disabilities; when given to him after his time of imprisonment has expired, it removes all that is left of the consequences of conviction—his disabilities." State vs. Baptiste, 26 La. Ann. 134.

Under the section of the Revised Statutes referred to a conviction of the crime of larceny in the courts of this State disqualifies the convict as a witness, and there can be no question that a pardon in such a case would restore his competency in this respect. From the conclusions stated, it is evident that an attempt on the part of the Legislature to exercise any part of the pardoning power exclusively conferred upon the board of pardons by section 12, Article IV of the Constitution, would be in conflict with that instrument, and therefore void.

The act relied on to qualify the witness, Bishop, provides for his restoration to "civil rights." There is, in a section in the suffrage and eligibility article of the Constitution, a provision that no person convicted of felony by a court of record shall be qualified to vote at any election unless restored to civil rights, and within the meaning of this provision it may be that the elective franchise is embraced within the civil rights contemplated. To accomplish the purpose for which the act of 1895 is invoked, it must have the effect to relieve Howard Bishop from the disability of not being able to testify as a witness attaching, under the law, to the conviction of the crime of larceny. This disability is as much a part of the pains and penalties of the violated law as incarceration, and after conviction it attaches as surely as any other part of the punishment. In our judgment the power to commute punishment and grant pardons for crimes after conviction had been conferred upon the Governor, the Secretary of State, Comptroller, Commissioner of Agriculture, and Attorney-General, and it is not competent for the Legislature to exercise such power. In this view it is not necessary to determine definitely

whether the restoration to civil rights, as provided in the act, would include the restoration of competency to testify as a witness, lost by reason of the conviction of crime, as Bishop could not testify by virtue of the act unless it had such effect, and to so construe it would place it in antagonism to the Constitution. Bishop should not have been permitted to testify, and for the error in this respect the judgment must be reversed.    In addition to the authorities cited, the following bear on the subject of pardons and its proper exercise:    State vs. Foley, 15 Nev. 64, S. C. 37 Am. Rep. 458; People vs. Bowen, 43 Cal. 439, S. C. 13 Am. Rep. 148; People ex rel. Forsyth vs. Court of Sessions of Monroe County, 141 N. Y. 288, 36 N. E. Rep. 386, S. C. 23 L. R. A. 856; Haley vs. Clark, 26 Ala. 439; State vs. Fleming, 7 Humph. 152, S. C. 46 Am. Dec. 73; Ogletree vs. Dozier, 59 Ga. 800; Baldwin vs. Scoggin, 15 Ark. 427; State vs. Nichols, 26 Ark. 74, S. C. 7 Am. Rep. 600; Sterling vs. Drake, 29 Ohio St. 457, S. C. 23 Am. Rep. 762; Attorney-General vs. Brown, 1 Wis. 513; People vs. Moore, 62 Mich. 496, 29 N. W. Rep. 80; State vs. McIntire, 1 Jones' Law, 1, S. C. 59 Am. Dec. 566, and note.

The accused made an application for a change of venue, upon which affidavits pro and con were filed. The application was denied.    There was also a plea in abatement of the indictment, alleging certain defects in the organization of the grand jury that presented the indictment, and there were certain proceedings on this plea.    We do not think there was reversible error in the rulings on the application for change of venue and plea in abatement.    Under the laws of this State an accused is entitled to be tried by an impartial jury, and when it shall appear to the trial judge that a fair

and impartial trial can not be had in the county where the offense was committed, he should direct that the accused be tried in another county. Under our decisions this matter is left largely to the discretion of the trial court, and its ruling on such matters will not be disturbed unless it appear from the facts presented that the court acted unfairly and committed a palpable abuse of a sound discretion.

We can not anticipate what the evidence will be on another trial of the case, and do not consider the instructions of the court to the jury; but we direct attention to the general proposition stated in one of the instructions, that an aggressor in a personal difficulty can never be heard to acquit himself of liabilities for its consequences on the ground of self-defense. Without considering now whether this portion of the charge, in the terms stated, contains a correct proposition of law under any state of circumstances, it may, so far as we can see, be omitted or modified in this case.

The judgment will be reversed and a new trial ordered.