306 So.2d 520 (1975)
In re ADVISORY OPINION OF the GOVERNOR CIVIL RIGHTS.
No. 45808.
Supreme Court of Florida.
January 6, 1975.
Robert L. Shevin, Atty. Gen., Baya M. Harrison III, Asst. Atty. Gen., and Kenneth M. Myers, Miami, for intervenors.
January 6, 1975
Honorable Reubin O'D. Askew
Governor, State of Florida
Tallahassee, Florida 32304
Dear Governor Askew:
We have the honor to acknowledge your communication of June 28, 1974, requesting our advice pursuant to Section 1(c), Article IV, Constitution of Florida, relating to certain executive powers and duties.
Omitting the formal parts, your letter reads as follows:
"By virtue of the provisions of Section 1(c), Article IV, Florida Constitution, 1968 Revision, and Rule 2.1(h), Florida Appellate Rules, I have the honor to request your written opinion as to the interpretation of a portion of the Florida Constitution affecting my executive powers and duties.
"The Legislature has recently passed an act entitled the Florida Correctional Reform Act of 1974, with an effective date of July 1, 1974. The act was signed into law on May 31, 1974. Section 28 of the Florida Correctional Reform Act creates Section 944.292 of the Florida Statutes to read as follows:
`Suspension of civil rights. Effective July 1, 1974, upon conviction for a felony, the civil rights of the person convicted shall be suspended until he is discharged from parole or released from the custody of the department of health and rehabilitative services without parole, at which time such civil rights are automatically reinstated. *521 The only civil rights which shall be suspended by conviction are the right to vote, hold public office and serve on a jury.'
"Article IV, Section 8 of the Florida Constitution relating to executive clemency provides that:
`Except in cases of treason and in cases where impeachment results in conviction, the governor may, by executive order filed with the secretary of state, suspend collection of fines and forfeitures, grant reprieves not exceeding sixty days and, with the approval of three members of the cabinet, grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses.'
"Article VI, Section 4 of the Florida Constitution provides that:
`No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability.'
"The basic concept presented as a part of the Florida Correctional Reform Act provides for suspension and automatic reinstatement of civil rights. However, the Florida Constitution provides that the Governor may, with the approval of three members of the Cabinet, restore civil rights. While I approved this legislation by signing it into law, it is possible that this legislation providing for suspension of civil rights may infringe upon the constitutional duties of the Governor and Cabinet. In view of this possible conflict between the provision of the Florida Correctional Reform Act and the above described provisions of the Florida Constitution, I am in doubt concerning my constitutional duties and responsibility in regard to executive clemency. I have the honor, therefore, to request your written opinion on the following questions:
`1. Does the provision of the Florida Correctional Reform Act present an infringement upon the constitutional power of the Governor and Cabinent to restore civil rights?
`2. The Florida Correctional Reform Act provides that "the only civil rights which shall be suspended by conviction are the rights to vote, hold office and serve on a jury." If valid, what is the effect of the Florida Correctional Reform Act upon legislation which has been enacted dealing with civil rights including the following Florida statutes: 112.011 (employment); 790.23(1) (firearms); 40.07(1) (jury); 775.13 (registration of convicted felons); 97.041[5] (d) (voting); and 561.15 (beverage license); and what are my duties in terms of the constitutional process of restoration of rights in regard to these statutes?
"I recognize that this Court is reluctant to pass on the constitutionality of an act of the Legislature in an advisory opinion. However, in this instance, such a determination is vital not only to the executive powers and duties of the Governor, but to those individuals whose restoration of rights is in question. It would be very difficult for these questions to reach a judicial forum through any method other than an advisory opinion."
Upon receipt of your request for advisory opinion relative to your executive powers and duties, this Court entered an interlocutory order finding that the questions propounded were answerable and requesting that briefs be filed by interested parties.
We respond to the first question in the affirmative and find that the questioned portion of the Florida Correctional Reform Act does constitute a clear infringement upon the constitutional power of the Governor to restore civil rights. Conviction of a felony removes many civil rights of a *522 person. Article VI, Section 4, Florida Constitution (1968), provides:
"No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability." (e.s.)
Article IV, Section 8(a), pertaining to executive clemency, pardons and restoration of civil rights, provides:
"Except in cases of treason and in cases where impeachment results in conviction, the governor may, by executive order filed with the secretary of state, suspend collection of fines and forfeitures, grant reprieves not exceeding sixty days and, with the approval of three members of the cabinet, grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses." (e.s.)
The provision of Section 28, Chapter 74-112, Laws of Florida, questioned herein provides:
"Effective July 1, 1974, upon conviction for a felony, the civil rights of the person convicted shall be suspended until he is discharged from parole or released from the custody of the department of health and rehabilitative services without parole, at which time such civil rights are automatically reinstated. The only civil rights which shall be suspended by conviction are the right to vote, hold public office and serve on a jury." (e.s.)
As early as 1896, this Court committed itself to the proposition that the power of pardon is reposed exclusively in the chief executive and with the approval of three members of his cabinet. In Singleton v. State, 38 Fla. 297, 21 So. 21 (Fla. 1896), this Court struck down an act of the legislature purporting to restore civil rights to a convicted felon for the reason that the power to commute punishment and grant pardons for crimes after conviction had been conferred upon the governor and cabinet "... and it is not competent for the legislature to exercise such power." Therein, this Court succinctly explicated:
"Article 2 of the constitution divides the powers of government into three departments,  legislative, executive, and judicial,  and provides that no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by the constitution. In the distribution of the powers of government the framers of our constitution had the right to lodge the pardoning power where they saw proper in the departments of government. We know, from judicial history, that the pardoning power was a part of the royal prerogative in England; and Chief Justice Marshall, in speaking for the court, in U.S. v. Wilson, 7 Pet. 150, [8 L.Ed. 640] says: `As this power has been exercised from time immemorial by the executive of that nation whose language is our language, and to whose judicial institutions ours bear a close resemblance, we adopt their principles respecting the operation and effect of a pardon, and look into their looks for the rules prescribing the manner in which it is to be used by the person who would avail himself of it.' As to the exercise of the power under our system of government, we must look to our organic law, the constitution. By the eleventh section of article 4 the governor alone is given power to suspend the collection of fines and forfeitures, and grant reprieves, for a period not exceeding 60 days, for all offenses, except in cases of impeachment, and in cases of conviction for treason the legislature can pardon on the suspension of the sentence by the governor. The twelfth section of the article, as amended, confers power upon the governor, secretary of state, comptroller, commissioner of agriculture, and attorney general to permanently remit fines and forfeitures, commute punishment, and grant *523 pardons after conviction, in all cases except treason and impeachment, subject to such regulations as may be prescribed by law relative to the manner of applying for pardons; and we are of the opinion that the pardoning power, after conviction, conferred by this section upon the board of pardons designated, is exclusive, and that the legislature cannot exercise such power.

* * * * * *
"It is settled law that the pardon of an offense not only blots out the crime committed, but removes all disabilities resulting from the conviction. `Imprisonment and hard labor are not the only punishments which the law inflicts upon those who violate its commands. Besides these are disabilities which are the consequences of conviction, and which remain after incarceration has ceased. A pardon is supposed to be granted to one who has been improperly convicted, or who has sufficiently expiated his offense. If it was only efficacious when the party was in duress, its effect would only be a halfway relief. The doctrine, now well recognized, upon this subject, is that a pardon gives to the person in whose favor it is granted a new character, and makes of him a new man. When extended to him in prison, it relieves him, and removes his disabilities. When given to him after his time of imprisonment has expired, it removes all that is left of the consequences of conviction,  his disabilities.' State v. Baptiste, 26 La. Ann. 134." (e.s.)
We find that the well established principle of expressio unius est exclusio alterius applies sub judice. The people of this state through adoption of Article IV, Section 8, Florida Constitution expressed their will that the power of pardon and restoration of civil rights vest in the executive. As aforestated, this Court has previously determined that this method is exclusive. As this Court expressly declared in Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, 256 (Fla. 1927):
"The principle is well established that, where the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done is itself a prohibition against a different manner of doing it. Holland v. State, 15 Fla. 455, text 523. See, also, Grantham v. Board of Public Inst., 77 Fla. 540, 82 So. 52. Therefore, when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the constitutional provision. State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 So. 433; State ex rel. Church v. Yeats, 74 Fla. 509, 77 So. 262; Leonard v. Franklin, 84 Fla. 402, 93 So. 688. See, also, Cooley's Const. Lim. (7th Ed.) p. 114; Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. 703; Bryan v. Sundberg, 5 Tex. 418; District Township v. Dubuque, 7 Iowa, 262."
See also: State ex rel. Jones v. Wiseheart, 245 So.2d 849 (Fla. 1971); In re Investigation of a Circuit Judge, 93 So.2d 601 (Fla. 1957); Board of Public Instruction, etc. v. Wright, 77 So.2d 770 (Fla. 1955); State ex rel. Ellars v. Board of County Commissioners of Orange County, et al., 147 Fla. 278, 3 So.2d 360 (Fla. 1941); Amos v. Matthews, 99 Fla. 115, 126 So. 308 (1930); Leonard v. Franklin, 84 Fla. 402, 93 So. 688 (Fla. 1922).
An advisory opinion to the Governor as authorized in Section 1(c), Article IV, Constitution of Florida, is an advisory appraisal for the benefit of the chief executive and, therefore, does not carry with it a mandate of the Court. However, it is our opinion that any court having jurisdiction of the legal question presented should and would enter its order holding Section 28 of Chapter 74-112, Laws of Florida, as *524 an unconstitutional invasion of the authority given exclusively to the Executive Branch of the government under our constitution. In view of this pronouncement, we find it unnecessary to reach the second question.
Respectfully,
 /s/ JAMES C. ADKINS, Jr.
 Chief Justice
 /s/ B.K. ROBERTS
 Justice
 /s/ JOSEPH A. BOYD, Jr.
 Justice
 /s/ DAVID L. McCAIN
 Justice
 /s/ HAL P. DEKLE
 Justice
 /s/ BEN F. OVERTON
 Justice
ERVIN, Justice (dissenting).
Dear Governor:
Because Section 8, Article IV, of the Florida Constitution uses the word "may", I do not believe you and the other executive officers named in this constitutional provision have exclusive authority to restore civil rights. It is to be recalled the constitution is a limitation upon and not a grant of powers to the Legislature. The Legislature is free to enact laws in all areas except where it is clearly manifest in the constitution that its power to enact is restricted.
I see no express or implied limitation upon the Legislature insofar as restoration of civil rights are concerned.
Restoration of civil rights is not to be confused with the granting of pardons or commutations. Ordinarily, it is held that the granting of a pardon is exclusively an executive function. See 50 Am.Jur.2d, Pardon and Parole, § 20, p. 15. But civil rights spring from the Bill of Rights  from the 13th and 14th Amendments to the U.S. Constitution. They involve equality of citizenship. It is generally recognized under modern concepts of the law that the Congress and the State Legislatures are within their powers to enact laws to enforce and vindicate such rights  and in the process to restore them where they have been shorn or deprived.
After a citizen who was convicted of crime has paid his debt to society, I think it lies within the inherent reserved power of the Legislature as a constitutional responsibility to formally restore his civil rights. It should be done speedily, automatically and routinely. Actually, the right to restoration of civil rights in such cases is not a matter of grace. To deny one citizen restoration when others of the same class are not denied would be invidious discrimination. One should not be attainted of crime further after serving his sentence fully. It is necessary to equality of citizenship that there be prompt restoration of civil rights after conviction sentences are completed.
It is pro forma and routine for the Pardon Board now to restore civil rights when applied for and the applicant is entitled to them. The Legislature thought it more expeditious and salutary in its enactment to blanketly restore civil rights when they were so entitled rather than require the individual to go through the delay and expense and red tape of applying for and securing them with the concomitant bureaucratic routine and expense to the state in granting them.
I would answer your question as indicated above.
Respectfully submitted,
 /s/ RICHARD W. ERVIN
 Justice.