348 So.2d 312 (1977)
Robert A. SULLIVAN, Gary E. Alvord and Learie L. Alford, Appellants,
v.
Reubin O'd. ASKEW, Etc., et al., Appellees.
No. 51276.
Supreme Court of Florida.
June 30, 1977.
Rehearing Denied July 26, 1977.
*313 Andrew A. Graham of the Law Offices of Charles M. Holcomb, Cocoa, and Tobias Simon and Elizabeth Du Fresne, Miami, for appellants.
Robert L. Shevin, Atty. Gen., James D. Whisenand, Deputy Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., and Eleanor A. Mitchell, Asst. Gen. Counsel, Tallahassee, for appellees.
KARL, Justice.
We have for review by direct appeal an order of the Circuit Court, in and for Leon County, granting appellees' motion to dismiss and deny appellants' petition for temporary injunctive relief, in which the court construes provisions of the Constitution of Florida, thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution.
Sullivan, Alford and Alvord, all convicted of capital felonies and sentenced to death (which convictions and sentences have been affirmed on appeal), filed a complaint for declaratory and injunctive relief and alleged that the Governor, along with three concurring members of the Cabinet, has the authority under Article IV, Section 8, Florida Constitution, to commute the death sentences by granting clemency; that a hearing is required; that minimal due process, including a fair and impartial tribunal, the right to be heard in person and by counsel, and written standards or guidelines setting forth factors to be considered in granting clemency, is required; and that the scheduled hearings deny due process. The trial court granted appellees' motion to dismiss the complaint on the basis that it lacked jurisdiction over appellees pursuant to Article II, Section 3, and Article IV, Section 8, Florida Constitution, and lacked jurisdiction of the cause, pursuant to the same constitutional provisions, and that the complaint failed to state a cause of action.
*314 The Parole and Probation Commission conducted investigations into each of appellants' cases and made a negative recommendation relative to commutation.
Preliminarily, we consider the decision of the trial judge expressly finding that the court lacks jurisdiction over the parties and the subject matter. Article V, Section 5, of the Florida Constitution vests the circuit courts with plenary power and the jurisdiction to construe all sections of the Constitution. Cf. Curtis et al. v. Albritton, 101 Fla. 853, 132 So. 677 (1931). It is a judicial responsibility to interpret and construe provisions of the Constitution when there are ambiguities or conflicts. The court may determine constitutional intent to assist in the decision of whether a given responsibility lies exclusively with one branch, whether that branch has been granted restricted or unrestricted power to perform such duties and whether the constitutional provision fixing the responsibility is self-executing. Moreover, the Court may determine whether any constitutional grant of power is being exercised according to the specific grant and in a manner that does not violate any other provision of the Constitution. The trial judge was in error when he held that the court was without jurisdiction, but because, as explained below, the clemency power is exclusively in the executive branch, he was correct in determining that the complaint fails to state a cause of action.
The clemency power, which is the power to suspend collection of fines and forfeitures, to grant reprieves, to grant full or conditional pardons, restore civil rights, commute punishments, and to remit fines and forfeitures for offenses, reposes exclusively in the Chief Executive.
Historically, the pardoning power was a part of the royal prerogative in England. Defining a pardon, Chief Justice Marshall, in United States v. Wilson, 7 Pet. 150, 8 L.Ed. 640, stated:
"A pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed. It is the private, though official, act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court."
This power flows from the Constitution and not from any legislative enactment, Advisory Opinion of the Governor, In Re: Administrative Procedure Act: Executive Clemency, 334 So.2d 561 (Fla. 1976). The United States Supreme Court, in Schick v. Reed, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974), concluded:
"A fair reading of the history of the English pardoning power, from which our Art. II, § 2, cl 1, derives, of the language of that clause itself, and of the unbroken practice since 1790 compels the conclusion that the power flows from the Constitution alone, not from any legislative enactments, and that it cannot be modified, abridged, or diminished by the Congress. Additionally, considerations of public policy and humanitarian impulses support an interpretation of that power so as to permit the attachment of any condition which does not otherwise offend the Constitution. The plain purpose of the broad power conferred by § 2, cl 1, was to allow plenary authority in the President to `forgive' the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions which are in themselves constitutionally unobjectionable. If we were to accept petitioner's contentions, a commutation of his death sentence to 25 or 30 years would be subject to the same challenge as is now made, i.e., that parole must be available to petitioner because it is to others. That such an interpretation of § 2, cl 1, would in all probability tend to inhibit the exercise of the pardoning power and reduce the frequency of commutations is hardly open to doubt. We therefore hold that the pardoning power is an enumerated power of the Constitution and its limitations, if any, must be found in the Constitution itself. It would be a curious logic to *315 allow a convicted person who petitions for mercy to retain the full benefit of a lesser punishment with conditions, yet escape burdens readily assumed in accepting the commutations which he sought." (Emphasis supplied.)
We quote with approval the following excerpt from American Jurisprudence:
"An executive may grant a pardon for good reasons or bad, or for any reason at all, and his act is final and irrevocable. Even for the grossest abuse of this discretionary power the law affords no remedy; the courts have no concern with the reasons which actuated the executive. The constitution clothes him with the power to grant pardons, and this power is beyond the control, or even the legitimate criticism, of the judiciary. Whatever may have been the reasons for granting the pardon, the courts cannot decline to give it effect, if it is valid upon its face, and no court has the power to review grounds or motives for the action of the executive in granting a pardon, for that would be the exercise of the pardoning power in part, and any attempt of the courts to interfere with the governor in the exercise of the pardoning power would be manifest usurpation of authority, no matter how flagrant the breach of duty upon the part of the executive, unless granted the power by competent authority or unless fraud has entered into the case."
Article IV, Section 8, Florida Constitution, provides:
"(a) Except in cases of treason and in cases where impeachment results in conviction, the governor may, by executive order filed with the secretary of state, suspend collection of fines and forfeitures, grant reprieves not exceeding sixty days and, with the approval of three members of the cabinet, grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses.
"(b) In cases of treason the governor may grant reprieves until adjournment of the regular session of the legislature convening next after the conviction, at which session the legislature may grant a pardon or further reprieve; otherwise the sentence shall be executed."
By this self-executing constitutional provision, the people of this state chose to vest sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace. This Court, in In Re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520 (Fla. 1975), explained:
"We find that the well established principle of expressio unius est exclusio alterius applies sub judice. The people of this state through adoption of Article IV, Section 8, Florida Constitution expressed their will that the power of pardon and restoration of civil rights vest in the executive. As aforestated, this Court has previously determined that this method is exclusive. As this Court expressly declared in Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253, 256 (Fla. 1927):
`The principle is well established that, where the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Even though the Constitution does not in terms prohibit the doing of a thing in another manner, the fact that it has prescribed the manner in which the thing shall be done is itself a prohibition against a different manner of doing it. Holland v. State, 15 Fla. 455, text 523. See, also, Grantham v. Board of Public Inst., 77 Fla. 540, 82 So. 52. Therefore, when the Constitution prescribes the manner of doing an act, the manner prescribed is exclusive, and it is beyond the power of the Legislature to enact a statute that would defeat the purpose of the constitutional provision. [Cases cited.]'"
Article II, Section 3, Florida Constitution, divides government into three separate and distinct branches of government and provides that "[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
*316 Holding that an attempt on the part of the Legislature to exercise any part of the pardoning power would be in conflict with the Constitution, this Court, in Singleton v. State, 38 Fla. 297, 21 So. 21 (1896), opined:
"... we are of the opinion that the pardoning power, after conviction, conferred by this section upon the board of pardons designated, is exclusive, and that the legislature cannot exercise such power. The constitution of Missouri vested the pardoning power in the governor, and it was decided in State v. Sloss, 25 Mo. 291, that such power belonged exclusively to the executive department, and could not be exercised by the legislature. The constitution of the United States confers upon the president the power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment, and Judge Story says (2 Const. § 1504) that `no law can abridge the constitutional powers of the executive department, or interrupt its right to interpose by pardon in such cases.' It was held, in Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366, that the pardoning power conferred on the president was not subject to legislative control... ."
Cf. In Re Advisory Opinion of Governor Civil Rights, supra.
Responding in the negative to the question of whether the requirements of Chapter 120, Florida Statutes, the Administrative Procedure Act, apply to the constitutional power of the Governor to extend executive clemency, this Court explicated:
"This Court has always viewed the pardon powers expressed in the Constitution as being peculiarly within the domain of the executive branch of government. Merely because the 1968 Constitution has given the Governor the initiative to institute certain acts of clemency and expanded the number of cabinet officers eligible to participate with him in the exercise of these powers, we see no reason to depart from our previous view that the Legislature may not intrude into this area of constitutional authorization. For that reason, and without regard to the absence of an express exemption in the Administrative Procedure Act for members of the cabinet, we believe that the acts of approval by members of the cabinet are also beyond the scope of the Act." Advisory Opinion of the Governor, In re: Administrative Procedure Act, supra.
This prohibition against legislative encroachment upon the executive's clemency power is equally applicable to the judiciary. Article II, Section 3, Florida Constitution. Declaring a legislative enactment, Chapter 16810, Acts 1935, unconstitutional and void as being in conflict with and in derogation of the constitutionally established execution power of clemency, in Ex parte White, 131 Fla. 83, 178 So. 876 (1938), this Court, in analyzing the separation of powers and exclusivity of this executive function, quoted the following excerpt from Cooley on Constitutional Limitations, Vol. 1 (8th Ed.), pp. 213-221.
"It may be proper to say here, that the executive, in the proper discharge of his duties under the constitution, is as independent of the courts as he is of the legislature." (Emphasis supplied.)
In the exercise of the exclusive power to grant or withhold clemency, the executive has adopted procedures that accord with the specific constitutional grant in Article IV, Section 8, Florida Constitution, and do not impose constitutionally objectionable conditions.
For the foregoing reasons, this Court will not intrude on the proper execution of the executive power, and the complaint that prays for such relief is without merit.
Accordingly, the order of the trial court, insofar as it holds that it is without jurisdiction, is reversed. We affirm that portion of the order finding that the complaint fails to state a cause of action and ordering that the complaint be dismissed.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, J., concurs in result only with an opinion.
*317 ENGLAND, Justice, concurring specially.
I concur in the majority's preliminary conclusion that the trial court had jurisdiction to entertain petitioners' lawsuit, and its ultimate conclusion that petitioners should not prevail. I do not agree with the majority's conclusion that the complaint fails to state a cognizable cause of action, however. Petitioners have convinced me that the clemency process recently used by the Governor and cabinet to determine if these petitioners should live or die is reviewable for minimal due process standards; they fail only in persuading me that the process actually applied has run afoul of any constitutional minima so as to entitle them to the relief they have requested.
To make my position as clear as I can at the outset, I do not hold the view that the Governor and three concurring cabinet members must exercise their discretion to grant or deny clemency in any specified or particular fashion, formal or informal. I do believe, however, that a basis for our judicial review is provided in this case because (i) the seven heads of Florida's executive branch of government have, of their volition, created a formal administrative agency for death sentence review, (ii) the procedures they have established for this agency purport to provide minimum due process beyond what the Constitution itself prescribes, and (iii) having willingly clothed this aspect of their clemency power in non-constitutional garbs[1] the Governor and cabinet cannot now declare themselves invisible to the judiciary so as to prohibit this Court from testing their procedures for fundamental fairness.
To understand my perceptions of this case it is necessary to identify a critical facet of petitioners' complaint which the majority opinion does not describe  the clemency process established by the Governor and cabinet for death sentence review. A copy of the procedure to which these officials willingly pledged themselves appears as an appendix to this opinion, with the critical provisions appearing as Rule 7. The majority's omission of any description of this process leaves the erroneous impression that petitioners are simply dissatisfied with their failure to receive clemency in a particular way. I do not understand that to be their complaint. I view their dissatisfaction as emanating from a special process which must, to be understood, be compared with the traditional processes for clemency.
Where a single executive has been assigned clemency powers, the usual process (which has generally avoided judicial scrutiny) is perhaps best exemplified by President Ford's pardon of former president Richard Nixon or President Carter's pardon of convicted Watergate burglar G. Gordon Liddy. Acting under the authority of Article II, Section 2 of the United States Constitution,[2] the President in each case simply sat down, penned a pardon, and publicly announced that he had done so. No hearings were held, no one was required to be consulted or to concur, and no reasons were required to be given.[3] The discretion to initiate and to grant these pardons was conferred by the Constitution, and it was exercised when, for whom and however the executive chose. By judicial precedent this "process" has remained unreviewable because any review at all would necessarily be a review of the discretionary power to initiate or to grant clemency.[4]
*318 Where the clemency power has been assigned to more than one member of the executive branch, as in Florida, the process of initiating or evaluating clemency applications can vary. For example, a recent exercise of clemency powers by the Governor and members of the Florida cabinet involved both joint and individual initiatives. In considering prospective pardons for convicted murderers Freddie Lee Pitts and Wilbert Lee, each pardon authority separately investigated the clemency candidates as a prelude to their joint meeting to receive public testimony. Each then individually exercised his discretion to sign or refuse to sign a pardon which the Governor first signed and left on file with the Secretary of State.[5] In this format, any attempt to review the "process" of pardon would necessarily have immersed the judiciary in the rationale of the decisionmakers, for the process itself had no substance or form beyond their individual investigations and decisions.
In contrast to these "processes", the newly devised death sentence review process operates very much like all other administrative processes in the executive branch of Florida's government. The rules adopted for this purpose establish an "Office of Executive Clemency" headed by a "coordinator" and staffed by assistants. A "proper record" of all proceedings is maintained. Precise steps for review are prescribed, channeled by precise time frames, and the process once triggered requires (i) a hearing examiner to take written or oral testimony, (ii) an informal evidentiary proceeding, (iii) a required report to be filed by the hearing examiner within 60 days, (iv) a required hearing before the Governor and cabinet, (v) notice to applicants' attorneys and to counsel for the state, (vi) authority for both counsel to file "exceptions, briefs or memoranda" concerning the examiner's report, (vii) a prohibition against direct communications to the Governor or any cabinet member during the pendency of the proceedings, and (viii) a public explanation for granting or not granting clemency.[6]
From this set of procedures, then, and not from the "traditional" process of clemency, petitioners assert their claim for fundamental fairness. The most ingenious of their arguments[7] proceeds in this fashion:
(1) we have always had the constitutional power to review clemency processes for procedural fairness, although we have traditionally declined to exercise that authority;
(2) at least since Furman v. Georgia[8] the ability of any state to execute its convicted criminals has become a unique constitutional problem;
(3) the Fourteenth Amendment to the United States Constitution imposes a continuing obligation on state supreme courts to guard against the exercise of arbitrary discretion in state executions, by assuring that due process minima are met at all critical pre-execution stages;[9] and
(4) the unique clemency process recently established in Florida in fact conflicts with *319 the minimum standard required by Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) and Songer v. Florida, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977).
This syllogism cannot be ignored, for it is beyond dispute that the rules established for death sentence review permit Gardner-prohibited material to enter into the decisional process. Section 7B of the rules expressly describes the parole commission's report as "similar to a pre-sentence investigation report ... a portion [of] which shall remain confidential." Gardner, of course, appears to preclude the use of that data in the mathematics of a life-death equation.
The issue inherent in petitioners' challenge to Florida's new death sentence review procedure asks this ultimate question: may the state, through its executive branch of government, take a human life after conducting an adversary proceeding in which the potential victim has been denied access to some of the data on the basis of which the decision was made, notwithstanding that the data need not have been considered, that the proceeding need not have been adversary, and that the proceeding need not have been established in the first instance? I would answer this critical question by saying that the Gardner decision does not clearly require a negative answer.
In Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), our death penalty statute was upheld on the authority of Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In Gregg the United States Supreme Court very clearly indicated that its constitutional concern regarding the imposition of death is the judicial process alone, and not the discretionary stages which precede (prosecutorial discretion) or succeed (clemency) the judicial processes of trial and appellate review.
"The existence of these discretionary stages is not determinative of the issues before us. At each of these stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty. Furman, in contrast, dealt with the decision to impose the death sentence on a specific individual who had been convicted of a capital offense. Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution. Furman held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant."[10]
The Court's focus on the "imposition" of a death sentence in a judicial proceeding was reiterated in Gardner.[11] Nothing yet said by the United States Supreme Court suggests that the discretionary decision whether or not to allow a judicially-approved death sentence is subject to the same due process strictures as are required for any judicial process employed to impose such a sentence. For that reason, and for the further reason that I would not engraft these due process requirements on the clemency powers conferred in Florida's Constitution, I conclude that the use of confidential materials in clemency proceedings is permissible.
In sum, whatever may constitute constitutionally impermissible clemency processes, the defects asserted by these petitioners are not of that magnitude and their complaint should, as the majority concludes, be dismissed.

APPENDIX A

 EXECUTIVE CLEMENCY
1. Statement of Policy
 Executive Clemency is a power vested in the Governor by the
Florida Constitution of 1968. Article IV, Section 8(a) of the
Constitution provides:
*320 Except in cases of treason and in cases where
 impeachment results in conviction, the governor may,
 by executive order filed with the secretary of state,
 suspend collection of fines and forfeitures, grant
 reprieves not exceeding sixty days and, with the
 approval of three members of the cabinet, grant full
 or conditional pardons, restore civil rights, commute
 punishment, and remit fines and forfeitures for
 offenses.
 Clemency is an act of grace proceeding from the power entrusted
with the execution of the laws and exempts the individual upon
whom it is bestowed from all or any part of the punishment the
law inflicts for a crime committed.
2. Office of Executive Clemency
 In order to assist in the orderly and expeditious exercise of
this executive power, the Office of Executive Clemency is created
to process those matters of Executive Clemency requiring approval
of three members of the Cabinet. These rules are created by
mutual consent of the Governor and Cabinet and nothing contained
herein can or is intended to limit the authority given to the
Governor or the Cabinet in the exercise of this constitutional
prerogative.
 The Governor with the approval of three members of the Cabinet
shall appoint a Coordinator who shall appoint all assistants. The
Coordinator and assistants shall comprise the Office of Executive
Clemency. The Coordinator shall keep a proper record of all
proceedings, and shall be the custodian of all records.
3. Paroles
 The Governor and Cabinet have no jurisdiction on questions of
parole and probation and such matters will not be entertained by
the Governor and Cabinet.
4. Persons Incarcerated
 Persons incarcerated, other than those sentenced to death, will
not be considered for any form of Executive Clemency, unless a
waiver is granted in accordance with Rule 14 or Clemency is
recommended by the Secretary of the Department of Offender
Rehabilitation or by the Chairman of the Parole and Probation
Commission. See Rule 7 for commutation of death sentences.
5. Clemency
 In the discretion of the Governor, if a case merits
consideration of Executive Clemency for any reason, the Governor
with the approval of three Cabinet members may bestow the
following acts of grace:
 A. FULL PARDON
 A Full Pardon unconditionally releases from punishment,
forgives guilt and entitles an applicant to all of the rights of
citizenship enjoyed by him before his conviction. It freely and
unconditionally absolves the offender from all legal consequences
of the conviction of an offense under Florida Law.
 B. CONDITIONAL PARDON
 A Conditional Pardon releases from punishment, only so long as
the applicant fulfills certain conditions, precedent or
subsequent, which are specified by the Governor with the approval
of three Cabinet members. A violation or breach of the conditions
may remove the conditional pardon and return the recipient to his
status prior to receiving same.
 C. COMMUTATION OF SENTENCE
 Commutation of Sentence changes the applicant's penalty to one
less severe, but does not restore civil rights. See Rule 7 on
commutation of death sentences.
 D. REMISSION OF FINES AND FORFEITURES
 Remission of Fines and Forfeitures suspends or removes fines or
forfeitures.
 E. RESTORATION OF CIVIL RIGHTS
 Restoration of Civil Rights restores to the applicant all or
some of the rights of citizenship enjoyed before felony
conviction(s)
*321 in the State of Florida or restores all or some civil rights in
this State for persons convicted under the laws of another state
or government of the United States.
 (1) RESTORATION OF CIVIL RIGHTS is granted to an applicant
convicted in a Florida court of more than one felony. Automatic
restoration of civil rights is granted to an applicant convicted
of one felony who otherwise qualifies under Rule 6.
 (2) RESTORATION OF CIVIL RIGHTS IN THE STATE OF FLORIDA is
granted to an applicant convicted of a felony in another
jurisdiction, including another state, federal or military court.
 F. RESTORATION OF RESIDENCE RIGHTS
 Restoration of Residence Rights restores to the applicant, who
is not a citizen of the United States and has no civil rights,
any and all rights enjoyed by him as a resident of Florida which
were lost as a result of a felony conviction under the laws of
the State of Florida, any other state, or the federal government.
The applicant must have been a bona fide resident of the State of
Florida for at least one year next prior to making application
for the restoration of residence rights.
 G. SPECIFIC AUTHORITY TO OWN, POSSESS OR USE FIREARMS
 Specific Authority to Own, Possess or Use Firearms restores to
the applicant the right to own, possess or use firearms after the
applicant's civil rights or residence rights have been restored.
Pursuant to the Federal Gun Control Act of 1968, a person who has
been convicted of a felony and has been granted restoration of
civil rights with authority to own, possess or use a firearm,
must apply to the Regional Director, Bureau of Alcohol, Tobacco
and Firearms, Post Office Box 2994, Atlanta, Georgia, 30301, in
order to meet federal requirements.
6. Automatic Restoration of Civil Rights
 A. When a person receives final release from the Florida Parole
and Probation Commission, Department of Offender Rehabilitation
or county jail, his civil rights shall be automatically
reinstated, except for his right to own, possess or use a
firearm.
 B. Any person released from the Florida Parole and Probation
Commission, the Department of Offender Rehabilitation, county
jail or released from probation by the court prior to the
effective date, November 1, 1975, of this rule may upon
application have his civil rights automatically reinstated,
except for his right to own, possess or use a firearm.
 C. This rule shall not apply to a person who has an outstanding
detainer based upon a state, an out-of-state or federal felony
charge or conviction or who is incarcerated based on a felony
conviction, or a person who has a previous or subsequent felony
conviction. In such cases a person may seek restoration of civil
rights by applying to the Office of Executive Clemency.
 D. The authority to own, possess or use a firearm may be
specifically granted by the Governor with approval of three
members of the Cabinet. Therefore, in cases where specific
authority to own, possess or use a firearm is sought, a person
shall make application to have his request considered by the
Governor and Cabinet.
 E. Notwithstanding automatic restoration of civil rights, a
person who has received final release from the Department of
Offender Rehabilitation by expiration of sentence or who has been
convicted of a felony and has been released from a county jail in
Florida is not exempt from the registration requirements of
Florida Statute 775.13 unless the Governor with approval of three
members of the Cabinet has restored the person's civil rights
with specific authority to own, possess or use a firearm.
7. Commutation of Death Sentences
 All Rules of Executive Clemency are inapplicable to cases of
inmates sentenced to death, except Rules 1, 2, 3 and 17.
 A. In capital punishment cases, the Clerk of the Court shall
prepare and send, pursuant to Section 922.09, F.S., a certified
copy of the conviction and sentence to the
*322 Governor within thirty (30) days after the Circuit Court's
receipt of the Florida Supreme Court's mandate or the dissolution
of any stay of the mandate. The Governor or any member of the
Cabinet, after reviewing a certified copy of the conviction and
sentence, may request the Florida Parole and Probation Commission
to make an appropriate investigation, inquiring into any factors
relevant to commutation. The Commission shall designate a person
to receive the written or oral statements of testimony from any
interested persons who wish to make their views on the inmate's
commutation known to the Governor and Cabinet and from the inmate
who may have legal counsel present. Statements or testimony shall
be taken in a non-adversary proceeding, without interrogation of
witnesses, except for the limited purposes of identifying
witnesses and clarifying statements. A report of the Commission's
investigation, including a transcript of the statements or
testimony, shall be provided to the Governor and members of the
Cabinet within sixty (60) days after request for investigation.
Along with the report, the Governor or any member of the Cabinet
may request a recommendation from the Commission. Any report
submitted by the Secretary of the Department of Offender
Rehabilitation shall be included in the Commission's report.
 B. Due to the nature of the information presented to the
Governor and Cabinet by the Florida Parole and Probation
Commission during review of capital cases for purpose of
consideration of Executive Clemency, the confidentiality of
certain of the material must be maintained. The report of the
Commission, similar to a pre-sentence investigation report, will
contain a portion which is public and a portion which shall
remain confidential. The portion of the report designated
confidential by the Commission shall include those documents as
required to be so by law, by agency or court rule, or by the
source. The confidential portion shall not be made public and
shall be available only to the following persons under the
following stated conditions:
 (a) To the Governor and Cabinet members to assist in
determining the Clemency request; and
 (b) To the attorneys for each side absent a compelling interest
to the contrary, as determined by the Governor. Any information
so disclosed to one party shall be disclosed to the opposing
party.
 C. After the Commission's report is received by the Governor
and Cabinet, the Coordinator shall place the name of the inmate
on the agenda for the next Executive Clemency meeting or a
specially called meeting of the Governor and members of the
Cabinet, but not sooner than thirty (30) days after receiving the
Commission's report including the transcript of statements or
testimony. The Coordinator shall also give immediate notice of
the time, date and place of the meeting to the appropriate State
Attorney and the Attorney for the inmate, advising each of the
availability of the Commission's report including the transcript
of the statements or testimony. Each Attorney may file with the
Coordinator, for distribution to the Governor and Cabinet
members, any written exceptions, briefs or memoranda on the case
up to ten (10) days prior to the date of the meeting.
 D. At the meeting to consider Executive Clemency, the Attorneys
may present oral arguments not exceeding thirty (30) minutes for
each side.
 E. After the meeting, no arguments for or against commutation
shall be presented to the Governor and Cabinet members
individually. Any person with relevant information or comments
must submit the same in writing to the Office of Executive
Clemency for reproduction and distribution to the Governor and
Cabinet members. The transcript of oral arguments will be
distributed to the Governor and Cabinet members.
 F. If commutation is ordered by the Governor with the approval
of three (3) or more Cabinet members, the Coordinator shall
prepare the order for their signatures, file the order with the
Secretary of State, and notify the Attorneys for each side. When
the order of Executive Clemency is filed or the decision not to
grant Executive Clemency is made, the positions of the Governor
*323 and Cabinet members shall be made public.
 G. If commutation is not granted, the Governor will request the
Attorney General to review the record, determine its legal
sufficiency for the issuance of the warrant, and notify the
Governor of any pending judicial proceedings involving the
inmate. The Coordinator shall prepare the warrant for the
Governor's signature, secure the seal and signature of the
Secretary of State, mail the warrant to the Superintendent of
Florida State Prison, and immediately notify the Attorneys for
each side of the issuance of the warrant.
 H. At the next Executive Clemency meeting, the Coordinator
shall report on the status of any capital cases still pending
before the Governor and Cabinet and on any subsequent disposition
of capital cases heard at the preceding Clemency meeting.
8. Application Forms
 Forms to be used in making application for Clemency will be
furnished by the Coordinator upon request. All correspondence
regarding application should be addressed to Coordinator, Office
of Executive Clemency, Room 442, Larson Building, Tallahassee,
Florida 32304.
9. Necessary Documents to be Filed with Application
 A. The following necessary documents shall be filed with the
application:
 (1) A certified copy of the charging instrument (indictment,
information or affidavit) and certified copy of judgment and
sentence of each felony conviction within the State, out-of-state
or federal. The Clerk of the Court, is requested to furnish such
documents without expense upon request.
 (2) An affidavit showing that a copy of the application was
furnished to the Prosecuting Attorney of the court in which the
applicant was convicted and to the presiding Judge of said Court.
 B. All supporting information or character references that the
applicant desires to present with his application must be filed
with the Coordinator at least thirty (30) days before the
Clemency meeting.
 C. The Governor may require that an applicant file a
stenographic report of the testimony given at his trial, if such
a report is available. It will not be necessary for an applicant
to file such stenographic report unless specifically notified to
do so by the Coordinator.
 D. It is the responsibility of the applicant to keep the Office
of Executive Clemency advised of any change of address.
10. Time for Filing Application
 A. Application for full pardon, conditional pardon, restoration
of civil rights with specific authority to own, possess or use a
firearm, residence rights of non-U.S. citizens, commutation of
sentence, remission of fines or forfeitures with above enumerated
attachments must be filed with the Coordinator on a standard form
at least sixty (60) days before the date set for the Clemency
meeting at which the application is to be heard.
 B. Application for restoration of civil rights in the State of
Florida which were lost by reason of a conviction under the laws
of another state or government of the United States and which
would have constituted a felony under Florida law, with above
enumerated attachments, must be filed with the Coordinator on
standard form at least 90 days before the date set for the
Clemency meeting at which the application is to be heard. The
applicant must have been a bona fide resident of the State of
Florida for at least one year next prior to making application
for restoration of civil rights.
11. Procedure for Consideration of Applications
 The Coordinator shall place upon the agenda for consideration
by the Governor and Cabinet at the next Clemency meeting all
applications:
 A. That are referred to the Coordinator by written notification
of the Governor.
*324 B. That are timely filed, that are complete and include all
necessary supporting papers required by these rules, and reflect
that the applicant meets the following criteria:
 (1) The applicant has been discharged from probation, mandatory
conditional release, or parole with no outstanding detainers.
 (2) The applicant has paid the pecuniary penalty or has been
released from incarceration by the expiration of sentence with no
outstanding detainers.
 C. That the Florida Parole and Probation Commission has made a
thorough investigation and study of the case, and made a
recommendation to the Governor and Cabinet, fully advising of the
facts upon which such recommendation is based, concerning
clemency either
 (1) on its own motion; or
 (2) when the Secretary of the Department of Offender
Rehabilitation has presented to the Florida Parole and Probation
Commission the names of persons released from prison at the
expiration of their sentences and such other cases of merit that
have come to his attention of inmates who have no means to
prepare their cases and applications for presentation to the
Governor; or
 (3) when it has investigated any inmate who is sentenced to
life imprisonment, who has actually served ten years, has
sustained no charge of misconduct, has a good institutional
record, and who has been recommended by the Secretary of the
Department of Offender Rehabilitation for a commutation of
sentence.
12. Reapplication
 Any person who has been granted or denied any form of Executive
Clemency may not apply for further Executive Clemency for at
least one year, unless a waiver is granted under Rule 14.
13. Failure to Meet Requirements of Rules
 If any application does not meet the requirements of these
rules, it may be returned to the applicant.
14. Waiver of the Rules
 When an applicant cannot meet the requirements of the rules and
wishes to have an application for Clemency considered, the
applicant may petition the Governor and Cabinet by letter for a
waiver of the rules. A waiver may only be granted by the Governor
with the approval of three members of the Cabinet. Upon receipt
by the Coordinator of written notification from the Governor and
three members of the Cabinet, the Coordinator shall place on the
agenda the application for clemency.
15. Referral to the Florida Parole and Probation Commission
 Every application which meets the requirements for
consideration, on its face, may be referred to the Florida Parole
and Probation Commission for investigation, report and
recommendation. Those whose applications have been submitted are
required to comply with reasonable requests of the Florida Parole
and Probation Commission in order to facilitate and expedite
investigation of their case.
16. Agenda
 The Coordinator shall prepare an agenda which shall include all
cases to be presented at the Clemency meeting for consideration.
The agenda shall be distributed to the Governor and Cabinet seven
days before the meeting.
17. Governor and Cabinet Cases
 Nothing contained herein shall prevent the Governor or any
member of the Cabinet from proposing a case for Executive
Clemency. Any such case may be acted upon by the Governor with
approval of three members of the Cabinet and nothing contained
herein shall limit the exercise of that power.
18. Presentation of Cases
 The Governor and Cabinet will meet in the Capitol on the first
Wednesday after
*325 the second Monday in the months of March, June, September and
December of each year, or at such other times as may be
designated by the Governor. An applicant need not be present at
the meeting. There will be no special sessions except to consider
an emergency upon the call of the Governor. Cases proposed in
accordance with Rule 17 may be acted upon by circulation of a
proposed order and without necessity of a meeting.
 A. In the presentation of cases being heard before the
Governor, not more than 20 minutes shall be allotted the
applicant and not more than 20 minutes shall be allowed the
protestants.
 B. All oral arguments to be presented either for or against an
application shall be presented at the Clemency meeting and not to
the Governor and Cabinet members individually except as provided
by Rule 14.
 C. Subsequent to the meeting, the Coordinator shall prepare
orders granting clemency as directed, certify after being signed,
mail, and file the original copies with the Secretary of State. A
letter will be directed to each party concerned, officially
stating disposition of his application. A Seal is not used by the
Office of Executive Clemency.
19. Continuance of Cases
 Continuance of cases filed will be allowed on application of
interested parties if based on sufficient grounds. Cases held
under advisement for further information desired by the Governor
with approval of three Cabinet members will be marked "continued"
and noted on each subsequent agenda until disposed of, taking
regular position with other cases on the agenda.
20. Withdrawal of Cases
 Withdrawal of cases filed will be allowed on application of
interested parties if based on good grounds. Cases that are
"withdrawn" from the agenda will not be considered again until
the application is refiled. Failure to comply with these rules
will be sufficient cause to refuse, without notice, to place an
application on the Agenda.
21. Effective Dates
 History.  Adopted September 10, 1975, Rule 6 (formerly Rule 9)
effective November 1, 1975; Rule 7 adopted December 8, 1976; Rule
6 amended December 8, 1976, effective February 15, 1977; revised
February 15, 1977.

NOTES
[1] This case does not involve the exercise of a constitutional prerogative in the manner prescribed in the Constitution, as was the situation which concerned the Court in Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253 (1927), quoted in the majority's opinion.
[2] "The President ... shall have power to grant reprieves and pardons for offences against the United States... ."
[3] Both presidents did, of course, explain why they had acted.
[4] Not all constitutional powers of the President are similarly immune from procedural requirements imposed by statute, or from judicial review. As to the former, see the Federal Register Act of 1935, 1 C.F.R. § 19.2(a)(1974). As to the latter, see United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). For a more complete treatment of the subject, see Levinson, Presidential Self-Regulation Through Rulemaking: Comparative Comments on Structuring the Chief Executive's Constitutional Powers, 9 Vand. J. Transnat'l L. 695 (1976).
[5] Executive Order No. 75-49 (Sep't. 11, 1975), filed with the Department of State on September 19, 1975.
[6] While this set of procedures is not asserted to bring death sentence review under the state's administrative procedure act, see Advisory Opinion to the Governor, 334 So.2d 561 (Fla. 1976), the parallel between the two processes is striking. Compare ch. 120, Fla. Stat. (1975). And see my dissenting advisory view, stated at 334 So.2d 563.
[7] I do not find the other aspects of asserted unfairness (denial of an impartial tribunal, lack of pre-articulated decisional standards, and a denial of allocution) to be constitutionally required in clemency matters. See Schick v. Reed, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974).
[8] 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). "Five members of the Court have now expressly recognized that death is a different kind of punishment than any other which may be imposed in this country." Gardner v. Florida, 430 U.S. 349, 357, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393, 401 (1977).
[9] "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393, 402 (1977).
[10] 428 U.S. at 199, 96 S.Ct. at 2937.
[11] See n. 9 above.