*Ex Parte:* CHESTER WHITE.

178 So. 876.
En Banc.
Opinion Filed January 25, 1938.

84

*Barton T. Douglas* and *Zack H. Douglas,* for Petitioner; *Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, *contra.*

CHAPMAN, J.—It has been made to appear in this Court by petition for a writ of habeas corpus that one Chester White, on the 23rd day of June, 1935, was sentenced to be electrocuted by the Circuit Court of Union County, Florida, for the unlawful killing of Omar Wilson. From this judgment of conviction of murder in the first degree a writ of error was sued out and the judgment of conviction affirmed by this Court. See: Chester White v. State, 126 Fla. 232,

170 Sou. Rep. 700. "Petitioner alleges that he is now being unlawfully restrained and deprived of his liberty by being held in custody for execution by electrocution, under and by virtue of a death warrant herein mentioned, by the Superintendent of the State Prison of Florida." It alleges further the death warrant is illegal and void for the following reasons: (1) The taking of life without due process of law; (2) the decision of this Court in the case of Chester White v. State, 126 Fla. 232, 170 Sou. Rep. 700, is not a final judgment as contemplated by law; (3) the death warrant was issued in derogation of Chapter 16810, Acts of 1935; (4) the death warrant is void because the Board of Pardons acquiesced and approved Chapter 16810, Acts of 1935, in extending clemency to one J. W. Larramore.

On August 10, 1937, a writ of habeas corpus was issued on the petition, service perfected on the proper officers and a return filed thereto in this Court to the effect: (a) the death warrant was issued in compliance with law; (b) that Chapter 16810, Laws of 1935, is an encroachment by the legislative department on the executive department and is void and unconstitutional; (c) that petitioner was convicted of murder in the first degree and sentenced to be electrocuted and is being held under said judgment.

Consideration by this Court has been given to the illegality of detention of petitioner, as alleged, to the effect that the execution of the death warrant dated August 6, 1937, means the taking of life without due process of law. The judgment of murder in the first degree affirmed by this Court and reported in 126 Fla. 232, 170 Sou. Rep. 700, reviewed the trial of the Circuit Court of Union County, Florida. While the members of the Court were equally divided in opinion as to whether the judgment should be affirmed or reversed an order was therein made by the whole Court to the effect that the judgment should be affirmed

on the authority of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 Sou. Rep. 51. We fail to see the merit of the contention of counsel for petitioner.

The second ground of illegality of petitioner's detention is that the order of affirmance of the final judgment of conviction, *supra,* is not a final judgment contemplated by law. We have examined the brief of counsel for petitioner without success for citation of authorities to sustain this contention. The judgment was affirmed by the whole Court, six members sitting en banc.

The third ground of illegality of detention is that the death warrant was issued in derogation of Chapter 16810, Acts of the Legislature of 1935. It is asserted that the decision of affirmance by this Court, *supra,* was by an equally divided Court and it became immediately the duty of the Board of Pardons, without notice or application to assemble and commute to life imprisonment the death sentence.

Section 12 of Article IV of the Constitution of Florida provides:

"The Governor, Secretary of State, Comptroller, Attorney General and Commissioner of Agriculture, or a major part of them, of whom the Governor shall be one, may, upon such conditions and with such limitations and restrictions as they may deem proper, remit fines and forfeitures, commute punishment, and grant pardon after conviction, in all cases except treason and impeachment, subject to such regulations as may be prescribed by law relative to the manner of applying for pardons."

It will be observed that the people of Florida by the above vested in the Executive Department of the State Government the power of pardoning those convicted of crime, as well as commuting punishment. This power and authority was by the constitutional provision, *supra,* vested in the Governor, Secretary of State, Comptroller, Attorney General

and Commissioner of Agriculture. The power and authority granted by the people to the pardoning board as expressed, *supra,* is broad, general and without limitation and may do what "they may deem proper." The people had the power to give the officers, *supra,* the authority as expressed and so remains until the people withdraw it and place it elsewhere.

In the case of Singleton v. State, 38 Fla. 297, 21 Sou. Rep. 21, 34 L. R. A. 251, 56 Am. St. Rep. 177, Howard Bishop gave material and damaging testimony on the trial of Singleton for murder. His testimony was objected to because he (Howard Bishop) had been convicted of larceny in the Circuit Court of Marion County, in 1889, and was not a competent witness under the (then) existing statute. It was agreed that Howard Bishop had been restored to civil rights by Chapter 4457, Acts of 1895. The question of the power of the Legislature to enact Chapter 4457 was presented. It was contended that this power under the Constitution was in the Executive rather than the Legislative Department of the government. It was held that Chapter 4457, Acts of 1895 Legislature of Florida, was unconstitutional and void and said:

"* * * From the conclusions stated, it is evident that an attempt on the part of the Legislature to exercise any part of the pardoning power exclusively conferred upon the board of pardons by Section 12, Article IV, of the Constitution, would be in conflict with that instrument, and therefore void.

"The Act relied on to qualify the witness, Bishop, provides for his restoration to 'civil rights.' There is, in a section in the suffrage and eligibility article of the Constitution, a provision that no person convicted of felony by a court of record shall be qualified to vote at any election unless restored to civil rights, and within the meaning of

this provision it may be that the elective franchise is embraced within the civil rights contemplated. To accomplish the purpose for which the Act of 1895 is invoked, it must have the effect to relieve Howard Bishop from the disability of not being able to testify as a witness attaching, under the law, to the conviction of the crime of larceny. This disability is as much a part of the pains and penalties of the violated law as incarceration, and after conviction it attaches as surely as any other part of the punisment. In our judgment the power to commute punishment and grant pardons for crimes after conviction has been conferred upon the Governor, the Secretary of State, Comptroller, Commissioner of Agriculture, and Attorney General, and it is not competent for the Legislature to exercise such power. In this view it is not necessary to determine defininitely whether the restoration to civil rights, as provided in the Act, would include the restoration of competency to testify as a witness, lost by reason of the conviction of crime, as Bishop could not testify by virtue of the Act unless it had such effect, and to so construe it would place it in antagonism to the Constitution. Bishop should not have been permitted to testify, and for the error in this respect the judgment must be reversed. In addition to the authorities cited, the following bear on the subject of pardons and its proper exercise: State v. Foley, 15 Nev. 64, S. C. 37 Am. Rep. 458; People v. Bowen, 43 Cal. 439, S. C. 13 Am. Rep. 148; People, ex rel. Forsyth, v. Court of Sessions of Monroe County, 141 N. Y. 288, 36 N. E. Rep. 386, S. C. 23 L. R. A. 856; Haley v. Clark, 26 Ala. 439; State v. Fleming, 7 Humph. 152, S. C. 46 Am. Dec. 73; Ogletree v. Dozier, 59 Ga. 800; Bladwin v. Scoggin, 15 Ark. 427; State v. Nichols, 26 Ark. 74, S. C. 7 Am. Rep. 600; Sterling v. Drake, 29 Ohio St. 457, S. C. 23 Am. Rep. 762; Attorney General v. Brown, 1 Wis. 513; People v. Moore, 62 Mich. 496, 29

N. W. Rep. 80; State v. McIntire, 1 Jones' Law, 1, S. C. 59 Am. Dec. 566, and note."

Chief Justice MARSHALL, in United States v. Wilson, 10 U. S. 435, text page 439, defined a pardon as:

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. It is the private, though official *act of the executive magistrate,* delivered to the individual for whose benefit it is intended, and not communicated officially to the court. * * *"

12 Corpus Juris par. 322, pages 838-39:

"INVASION OF PARDONING POWER. The pardoning power is not necessarily an executive function, and, to the extent that it is not vested by the Constitution, it belongs no more to the executive branch of the government than to the legislative. But where the pardoning power is conferred on the executive without express or implied limitations, the grant is exclusive, and the Legislature can neither exercise such power itself nor delegate it elsewhere, nor interfere with or control the proper exercise thereof, as by imposing conditions to the full enjoyment of the rights conferred by such pardon. If the Constitution limits the pardoning power to cases of convicted criminals, the Legislature may pass a General Act of amnesty of offenses committed prior to a certain date, the perpetrators of which offenses have not been tried and convicted. Congress may provide that a witness required to give evidence tending to incriminate himself shall never be prosecuted for the offense to which the testimony relates."

Cooley on Constitutional Limitations, Volume One (8th Ed.) pages 213 to 221, treating the question of legislative encroachments upon the executive powers said:

"If it is difficult to point out the precise boundary which separates legislative from judicial duties, it is still more difficult to discriminate, in particular cases, between what is properly legislative and what is properly executive duty. The authority that makes the laws has large discretion in determining the means through which they shall be executed; and the performance of many duties which they may provide for by law they may refer either to the chief executive of the State, or, at their option, to any other executive or ministerial officer, or even to a person specially named for the duty. What can be definitely said on this subject is this: That such powers as are specially conferred by the Constitution upon the Governor, or upon any other specified officer, the Legislature cannot require or authorize to be performed by any other officer or authority; and from those duties which the Constitution required of him he cannot be excused by law. But other powers or duties the executive cannot exercise or assume except by legislative authority, and the power which in its discretion it confers it may also in its discretion withhold, or confide to other hands. Whether in those cases where power is given by the Constitution to the Governor, the Legislature have the same authority to make rules for the exercise of the power that they have to make rules to govern the proceedings in the courts, may perhaps be a question. It would seem that this must depend generally upon the nature of the power, and upon the question of whether the Constitution, in conferring it, has furnished a sufficient rule for its exercise. Where complete power to pardon is conferred upon the executive, it may be doubted if the Legislature can impose restrictions under the name of rules or regulations (unless the Constitution expressly authorizes it to do so); but where the Governor is made commander-in-chief of the military forces of the State, it

is obvious that his authority must be exercised under such proper rules as the Legislature may prescribe, because the military forces are themselves under the control of the Legislature, and military law is prescribed by that department. There would be this clear limitation upon the powers of the Legislature to prescribe rules of the executive department; that they must not be such as, under the pretense of regulation, divest the executive of, or preclude his exercising, any of his constitutional prerogatives or powers. Those matters which the Constitution specifically confides in the Legislature cannot directly or indirectly take from his control. And on the other hand the Legislature cannot confer upon him judicial authority; such as the authority to set aside the registration of voters in a municipality; or clothe him with any authority, not executive in its nature, which the Legislature itself, under the Constitution, is restricted from exercising.

"It may be proper to say here, that the executive, in the proper discharge of his duties under the Constitution, is as independent of the courts as he is of the Legislature."

Chapter 16810, Acts of 1935, provides:

"Section 1. If any person has been or is hereafter convicted in a Court of this State of murder in the first degree, or other capital offense and who has been or is sentenced accordingly, and upon appeal to the Supreme Court of this State that Court is equally divided on the appeal, the Board of Pardons of the State shall immediately and without notice and without application being filed with the Board, assemble and commute to life imprisonment the sentence of such person."

The statute makes it the mandatory duty of the Executive Department of the State government as the officers named in Section 12 of Article IV of the Constitution to meet and exercise the powers granted by the people and

delegated to them by commuting to life imprisonment the sentence of any person convicted of murder in the first degree, or other capital offenses, when it shall appear that the Supreme Court of Florida is equally divided on said judgment. The statute makes it the duty of the Board of Pardons to immediately assemble and without the formality of an application on the part of the person convicted to commute the sentence and it is its duty to do so without giving notice to the public of its intended action. Section 12, Article IV, of the Constitution grants power to the Board of Pardons to remit fines, forfeitures, *commute* punishment, and grant pardons *after* convictions in all cases, except treason and impeachment, "upon such conditions and with such limitations and restrictions as they may deem proper." The quoted provision of the Constitution clothes the Board of Pardons with broad and wide discretion in remitting fines, commuting punishments and granting pardons. It in no instance names the crime that the Board of Pardons shall act upon but their judgment, knowledge and experience applied to the facts and circumstances controlling each application shall control. If either of the officers constituting the pardoning board proves unfaithful or unworthy, or abuses the trust imposed, the people have a right to pass upon his record at the polls. They are each responsible to the people for the proper and correct exercise of this broad discretion granted by the Constitution. There can be no responsibility for their action if the mandates of this statute are to control. It is clear that a conflict in duty on the part of the pardoning board exists between Section 12, Article IV, of the Constitution of Florida and Chapter 16810, Acts of 1935. The rights of the petitioner are affected by the statute, *supra,* and his petition here raises the constitutionality thereof. See *In re:* DeWoody, 94 Fla. 96, 113 Sou. Rep. 677, and cited authorities.

In the case of Gray, as Secretary of State, v. Central Fla. Lbr. Co., 104 Fla. 446, text p. 451-52, 140 Sou. Rep. 320, 141 Sou. Rep. 604, this Court adopted certain rules or canons to be observed in the construction of statutes, viz.:

"One challenging the constitutional validity of an Act of the Legislature is confronted with these canons of statutory construction: (1) On its face every Act of the Legislature is presumed to be constitutional; (2) Every doubt as to its constitutionality must be resolved in its favor; (3) If the Act admits of two interpretations, one of which would lead to its constitutionality and the other to its unconstitutionality, the former rather than the latter must be adopted; (4) The constitutionality of a statute should be determined by its practical operation and effect; (5) In determining its constitutional validity court should be guided by a substance and manner of operation rather than the form in which the Act is cast; and (6) After indulging all presumptions in favor of the Act, if it is found to be in positive conflict with some provision of organic law, it becomes the duty of the court to strike it down."

In State, *ex rel.* Moodie, v. Bryan, 50 Fla. 293, 39 South. Rep. 929, this Court said:

"Our State Constitution is a limitation upon power, and unless legislation duly passed be contrary to some express or implied prohibition contained in the Constitution, the courts have no authority to pronounce it invalid. * * *

"The reasonableness or justice of a deliberate Act of the Legislature, the wisdom or folly thereof, the policy or motives prompting it, so long as the Act does not contravene some portion of the organic law, are matters for legislative consideration and are not subject to judicial control. The courts are bound to uphold a statute, unless it is clearly

made to appear beyond a reasonable doubt that it is unconstitutional."

Chapter 16810, Acts of 1935, being in conflict with and in derogation of Section 12, Article IV, of the Constitution of Florida, the same is declared unconstitutional and void. The petitioner is remanded to the custody of the officers for further proceedings as prescribed by law.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and. TERRELL and BUFORD, J. J., concur in the opinion and judgment.