300 So.2d 70 (1974)
Houston OWENS, Appellant,
v.
STATE of Florida, Appellee.
No. U-177.
District Court of Appeal of Florida, First District.
September 10, 1974.
*71 Richard W. Ervin, III, Public Defender and David J. Busch, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Andrew W. Lindsey, Asst. Atty. Gen., for appellee.
McCORD, Judge.
This is an appeal from appellant's conviction and sentence to life imprisonment for rape of a female child under the age of 11 years, a capital offense.
Appellant has raised three points on appeal. He first contends that the court erred in admitting into evidence a certain blue jacket, allegedly the product of an unreasonable search and seizure. Second, appellant contends that the trial judge erred in denying his motion for judgment of acquittal made at the conclusion of the trial and his motion for new trial in that the state failed to prove an essential element of the rape  penetration. Lastly, appellant contends that Section 775.082(1), Florida Statutes, is unconstitutional in that it provides that a person convicted of a capital offense and sentenced to life imprisonment must serve a minimum of 25 years imprisonment before becoming eligible for parole.
As to appellant's first point, the trial court found from the evidence presented that at the time of the alleged search and seizure of the blue jacket, the defendant's mother was the legal custodian of the premises from which the jacket in question was removed; that the defendant, not being the custodian of the premises, had no legal standing to object to the search if there was a search; that at the time of and prior to the removal of the jacket from the premises in question, the defendant's mother, who was the custodian of the premises, had given the officer permission to search her premises including the room occupied by the defendant after being told that she did not have to permit such a search. From our review of the evidence it appears that immediately after appellant was taken into custody, a police officer went to the home where appellant resided with his mother in an attempt to locate the blue jacket; that he did not obtain a search warrant because it was known in the neighborhood that appellant had been taken into custody and the officer was afraid that the evidence might be destroyed if he delayed long enough to get a warrant. Although the evidence is conflicting as to the events following the officer's arrival at the home, he testified that upon his arrival he spoke to appellant's mother and advised her that her son had been taken into custody on suspicion of raping a nine-year-old child; that he had reason to believe that certain clothing worn by appellant, particularly a jacket with the name tag "Don," was located in the house; that he further advised her that he did not have a search warrant; that she had a right to refuse to let him search her house; that she had a right to contact her attorney; that if he did search the house and found incriminating evidence, it could be used against appellant. He further testified that appellant's mother told him that if appellant was involved in a rape, she wanted to know about it, and she then proceeded to the bedroom which she indicated was appellant's room and as he (the officer) stood in the doorway, she searched the room for the jacket, found it and brought it out; that he asked her to let him have the jacket and she handed it to him.
Appellant in support of his contention that this was an unreasonable search and seizure relies upon Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In Bumper, however, the search of the home where the defendant resided was made through subterfuge. Four police officers had gone to the home of a widow with whom the defendant lived and announced to her that they had a search warrant to search her house; and she, thinking they had a warrant, admitted them and allowed them to make the search. In the case sub judice, there is no evidence of subterfuge. The trial judge before whom all of the witnesses testified was in *72 the best position to judge their credibility and the weight to be accorded their testimony. See James v. State, Fla.App. (4th), 223 So.2d 52. The version of the testimony which was apparently believed by the trial judge supports the validity of the search, and we cannot say that his ruling was against the weight of the testimony.
As to appellant's second point, we have carefully considered the testimony and the arguments contained in the brief. While there is no direct testimony of penetration (the nine-year-old victim, not being sufficiently knowledgeable to testify as to penetration) the medical testimony regarding the nature of the lacerations of the child's vagina and her testimony as to his being on top of her, plus the expert testimony that the chemical analysis of stains found on the child's undergarments were semen stains matching appellant's rare A-B blood type constituted sufficient circumstantial evidence to support the jury's verdict.
As to appellant's third point, although he contended in the trial court that Section 775.082(1) was unconstitutional, he based such contention on the ground other than the one he now argues on appeal. In spite of this, however, we will consider the ground here presented.
Section 775.082(1), Florida Statutes, provides that a person convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 calendar years before becoming eligible for parole if he is not sentenced to death. Appellant argues that the granting or withholding of parole is a discretionary function vested only in the executive branch of government and cannot be exercised by the legislature. He grounds this upon Article IV, Section 8(c) of the Florida Constitution which provides as follows:
"(c) There may be created by law a parole and probation commission with power to supervise persons on probation and to grant paroles or conditional releases to persons under sentences for crime ..."
We are unable to follow appellant's reasoning on this point. The Parole and Probation Commission by this provision of the Constitution, is a creature of the legislature, its creation being discretionary with the legislature. We do not read into this provision any limitation which would restrict the legislature from establishing minimum conditions under which parole may be granted for a particularly heinous crime. The legislature has made certain extremely reprehensible crimes capital offenses. One committing such a crime can receive the death penalty but if the judge does not invoke the death penalty, the legislature has provided that the sentence shall be life imprisonment without consideration for parole until the convict has served at least 25 years of the sentence. This restriction against parole for a 25 year period is part of the penalty which has been established as an alternative to a death sentence for commission of the crime. We find nothing which prohibits such a sentence.
Appellant argues that the establishment of minimum sentences for certain crimes or a minimum period which must be served prior to a prisoner becoming eligible for parole for a particular crime is in violation of modern sentencing concepts. Such arguments, however, should be addressed to the legislature rather than to the court. The legislature fixes the nature and range of sentences within which the courts must operate. We are concerned here only with whether or not the legislature had the power under the Constitution to prescribe the penalty which it did prescribe for the crime in question.
Affirmed.
RAWLS, C.J., and JOHNSON, J., concur.