379 So.2d 148 (1980)
Larry TURNER, James Benner Bailey, Jr., William G. Brooker, Richard Lee Rieser, Howard Gene Kilgore, and John Michael Haddon, Petitioners,
v.
Louie L. WAINWRIGHT, Respondents.
Larry Edward TURNER, Appellant,
v.
FLORIDA PAROLE AND PROBATION COMMISSION, Appellee.
Nos. KK-260, MM-471, MM-448, NN-84, NN-198, PP-246 and LL-128.
District Court of Appeal of Florida, First District.
January 16, 1980.
*149 Richard A. Belz, and Thomas A. Daniel, of Florida Institutional Legal Services, Inc., Gainesville, for petitioners and appellant.
Michael H. Davidson, Gainesville, Jim Smith, Atty. Gen., and Carolyn M. Snurkowski, and David P. Gauldin, Asst. Attys. Gen., Tallahassee, for respondent and appellee.
ROBERT P. SMITH, Acting Chief Judge:
Does the open public meetings law, Section 286.011,[1] apply to parole revocation meetings of the Parole and Probation Commission, or would the constraints of that law unconstitutionally invade clemency prerogatives of the executive branch, in violation of Article IV, Section 8, and Article II, Section 3, Constitution of Florida? Last year in Thomas[2] we stated that Section 286.011 applies "to all meetings of the Parole and Probation Commission." We now reexamine that question in the light of the Commission's constitutional objections to these three petitions for a writ of habeas corpus, contesting petitioners' imprisonment resulting from nonpublic meetings of the Commission, and Turner's appeal from the Commission's declaratory statement that its parole revocation meetings are constitutionally exempt from the public meetings law. The petitions for habeas corpus and the administrative appeal appropriately raise the issues. Jackson v. Mayo, 73 So.2d 881 (Fla. 1954); State v. Sampson, 297 So.2d 120 (Fla. 4th DCA 1974); Sections 120.565, 120.68, Florida Statutes (1977).
Turner's case is typical of Brooker's and Bailey's. Turner is imprisoned by the Department of Corrections, of which respondent Wainwright is head, by reason of a decision of the Parole and Probation Commission, on May 11, 1978, revoking Turner's *150 liberty on mandatory conditional release from a sentence of the Circuit Court of Dade County. "Mandatory conditional release" or MCR is release of a prisoner, "as if on parole," when the prisoner has served the prescribed prison term less gain-time and good-time allowances.[3] Turner's original sentence and, consequently, his MCR or parole status,[4] would have terminated February 9, 1978, had Turner not been arrested in August 1977 for violations of his release conditions which were the basis of the Commission's revocation order of May 11, 1978.
The Commission on May 5, 1978, gave Turner an opportunity to be heard and to present evidence on the charges of MCR violations. On May 11, 1978, four members of the Parole and Probation Commission met at Tallahassee and, at a meeting that admittedly was not open to the public, press, petitioner, petitioner's counsel, or other interested persons, voted to revoke Turner's release. Thereupon the Commission entered a written order revoking Turner's release status and returning Turner to Florida State Prison.
Numerous decisions have now acknowledged that the open public meetings law, Section 286.011, serves to "promote a state interest of the highest order," by tending to "enhance and preserve democratic processes." E.g., Byron Harless, Schaffer, Reid and Assoc., Inc. v. State ex rel. Schellenberg, 360 So.2d 83, 97 (Fla. 1st DCA 1978), and cases cited. In defense of its failure to comply with Section 286.011 in the revocation of Turner's release, the Commission's position is simply this: that its function in revoking MCR and parole orders is a function of the executive branch and is, more particularly, akin to the pardon power, which historically and constitutionally is a matter of executive grace, to be exercised on occasions and in a manner determined by the executive, free of legislative or judicial control. Thus, the Commission urges, paroles like pardons are of exclusive concern to the executive and the legislative branch is foreclosed from such control as is exerted by the open public meetings law. The constitutional sources of the Commission's argument are Article II, Section 3 ("Branches of government"), Constitution of Florida (1968), providing:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
And Article IV, Section 8 ("Clemency"), providing:
(a) Except in cases of treason and in cases where impeachment results in conviction, the governor may, by executive order filed with the secretary of state, suspend collection of fines and forfeitures, grant reprieves not exceeding sixty days and, with the approval of three *151 members of the cabinet, grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses.
(b) In cases of treason the governor may grant reprieves until adjournment of the regular session of the legislature convening next after the conviction, at which session the legislature may grant a pardon or further reprieve; otherwise the sentence shall be executed.
(c) There may be created by law a parole and probation commission with power to supervise persons on probation and to grant paroles or conditional releases to persons under sentences for crime. The qualifications, method of selection and terms, not to exceed six years, of members of the commission shall be prescribed by law.
We agree with the premise from which the Commission's argument proceeds: that the legislative branch is without authority to prescribe either the occasions for exercising the pardon power or the manner and procedure for its exercise. Singleton v. State, 38 Fla. 297, 21 So. 21 (1896), struck down an act which purported to grant a convicted felon clemency by restoring his competency to testify, forfeited in those days by conviction. Ex parte White, 131 Fla. 83, 178 So. 876 (1938), nullified an act which purported to require commutation to a life prison term of any death sentence affirmed by an equally divided Supreme Court. In re Advisory Opinion of the Governor, 334 So.2d 561 (Fla. 1976), held that the Administrative Procedure Act of 1974 could not lawfully constrict the executive's clemency powers under Article IV, Section 8(a), of the 1968 Constitution. Sullivan v. Askew, 348 So.2d 312 (Fla. 1977), cert. den., 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 159 (1977), held that the clemency powers prescribed by Sections 8(a) and (b) are not subject to constitutional due process strictures as interpreted and enforced by the judicial branch. From this we conclude that the open public meetings law, Section 286.011, could not constitutionally be held to require compliance by the Governor (even assuming he could "meet" with someone in the exercise of exclusive gubernatorial responsibilities), or by the Governor and Cabinet, in dispensing pardons and the other forms of clemency authorized by Article IV, Section 8(a), Constitution of Florida (1968).
Since 1968 the constitutional authority for paroles has been housed with pardons and other clemency measures in Article IV, Section 8. Yet subsection 8(c) is of a character different from 8(a), which grants certain clemency powers outright to the Governor, or to the Governor and Cabinet. Subsection 8(c) provides that a Parole and Probation Commission, having parole powers, "may be created by law." Concerning this the Commission concedes that subsection 8(c) was not self-executing, that the legislature was given power to call parole and the Commission into existence; but the Commission urges that, once created by law, it partakes of the executive's immunity from legislation in dispensing pardon-like paroles. In the terms of subsection 8(c), the Commission urges that it could be and was "created by law," but that legislation cannot control its exercise of powers which historically are those of an unfettered executive branch.
The Commission's argument hangs precariously on the 1968 Constitution's consolidation of various "clemency" powers in Article IV, Section 8, after 28 years in which the parole power was housed separately from pardon powers in the miscellany of the 1885 Constitution, Article XVI, Section 32. The Commission's argument also misreads the history and justification of pardons, which are founded and sustained on considerations not shared by paroles.
In the common law of England the pardon power was a matter of kingly grace; and, as befits regal things, it was all the more wonderful because its exercise was inexplicable and idiosyncratic. As one did not question the king, no further explanation was required but that, by "a private act of grace from an individual happening *152 to possess power,"[5] the law's judgment and sentence were set aside.
As a part of Florida's constitutional scheme in the twentieth century, the pardoning power has been justified as a means to correct judicial errors,
to prevent pauperization of families, to prevent unwarranted incidence of the punishment on the convict's family instead of on him as intended, or where through the particular condition surrounding incarceration of the prisoner, he should be released irrespective of the views of the accused or his friends in the matter [Davis, ante fn. 5 at 469.]
In 1931, Attorney General Fred Davis likened the pardon power to "that exercised by courts of bankruptcy who in our civil law system relieve debtors to individuals at the expense of their creditors, because the public welfare demands that such relief be granted... ." He suggested a social utility in pardons which we may suppose was irrelevant to the justification of kingly grace: because the executive "has generously exercised its power to release the better class of prisoners after they have served a reasonable portion of their sentences without requiring them to serve in full," pardons had reduced from 8,769 to 2,600 the number of prisoners that would in 1931 have been incarcerated in Florida State Prison. Davis, ante fn. 5, at 469-70.
While regal overtones still accompany pardons,[6] it is apparent that, in the early twentieth century, pardons became more broadly justified and more systematically granted than the pardons of any king of history or folklore. The Pardon Board  the Governor and Cabinet were so designated by the 1885 Constitution  evolved a species of pardon which did not instantaneously obliterate the conviction, which was the characteristic of earlier pardons, but instead released the convict from further prison service on condition of his continuing good behavior.
As is usually the case, the law's rationalization of its movement lagged behind the movement itself. Although parole as we know it today had no basis in constitutional terms until 1940, it was "common knowledge" that, for many years before, "the Pardon Board of Florida has granted a type of release that has been loosely referred to as a `parole' even by the Supreme Court of Florida."[7]See, e.g., State ex rel. Morenco v. Mayo, 131 Fla. 271, 175 So. 806 (1937). Conceptually, pardons in the sense of paroles passed through the intermediate stage of "conditional pardons," by which the convict was released with a "pardon" having its full and ancient effect upon his guilt, but not until he died in compliance with the condition that he "hereafter lead a sober, peaceable, and law-abiding life." E.g., Ex parte Alvarez, 50 Fla. 24, 28, 39 So. 481, 482 (1905); State ex rel. Brown v. Mayo, 126 Fla. 811, 812, 171 So. 822, 823 (1937).
Parole was first authorized as such by a 1940 amendment adding Article XVI, Section 32 to the 1885 Constitution:
The Legislature may create a Parole Commission empowered to grant paroles or conditional releases or probation under official supervision to prisoners or persons charged with criminal offenses, and may provide for the qualification and method of selecting the Commission members and for their term of office the length of which shall be wholly within the discretion of the Legislature.
The legislature acted in 1941 to create the Parole Commission and to regulate, in some detail, its organization and procedure. Chapter 20519, Florida Laws (1941); Chapter 947, Florida Statutes (1941).
*153 Although the parole power founded on Article XVI, Section 32, was thus distinguished constitutionally and in operation[8] from the pardon power founded on Article IV, Section 12 of the 1885 Constitution,[9] the doctrinal association of parole with the Pardon Board did not die easily. Sheppard v. Mayo, 46 So.2d 729, 730 (Fla. 1950), spoke of a "parole" granted for a specific term "pursuant to authority given the Pardon Board under Section 12, Article IV of the Constitution... ." See also La Barbera v. State, 63 So.2d 654 (Fla. 1953); Clark, op. cit. supra fn. 7, 11 U.Fla.L.Rev. at 69. But in 1954 the Supreme Court drew a sharp distinction between a 1935 "parole", granted by that name by the Pardon Board, and the parole that was available, at the time of the decision, from the Parole Commission. Beal v. Mayo, 70 So.2d 367 (Fla. 1954). The issue was whether Beal was subject to recommitment in 1953 for violation of conditions of the "parole" granted by the Pardon Board in 1935. Beal's violation evidently occurred after 1946, when his original sentence would have expired. Although the Parole Commission's power to revoke a parole order terminated upon expiration of the term of the original sentence,[10] the Court held that was not true of a "parole" granted by the Pardon Board in 1935. Noting that the Pardon Board's constitutional authority is "only" to commute punishment and to grant pardon after conviction, the Court held that the Pardon Board's 1935 order, though in terms a parole, "was in law a conditional pardon ...," which could be granted and accepted on any conditions satisfactory to the Pardon Board and to the convict, including a condition that his good behavior continue beyond the original term of his sentence. For the violation of that condition, the Court held, "recommitment ... is proper notwithstanding the fact that the period of original sentence has expired... ." Beal, 70 So.2d at 368.
Despite the generic relationship of pardons and paroles during the years in which those remedies were available only at the hands of the Pardon Board, exercising king-like powers which no legislature or court could question or cancel, after 1940 the parole power rested entirely in Article XVI, Section 32 of the 1885 Constitution, now similarly expressed by Article IV, Section 8(c), of the 1968 Constitution. Placing the 1940 parole amendment in the executive article of the 1968 Constitution, where it is arrayed with Section 8(a)'s historic executive powers to "grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses," does not replant parole in the *154 ancient and impenetrable garden of kings. The placement of parole powers in the executive article "is functional" only,[11] not necessarily indicative of executive exclusivity. Cf. Article IV, Sections 7(b), 8(b) (other legislative powers in executive article).
The historic and constitutional distinction between the executive's pardon power and its parole power decides this case. The pardon power rests upon "self-executing constitutional provisions," by which
... the people of this state chose to vest sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace. [Sullivan v. Askew, 348 So.2d 312, 315 (Fla. 1977)]
The parole power, on the other hand, is reposed only in "a parole or probation commission" which "may be created by law," and has been so created, but need not have been, and which is subject to all laws, substantive or procedural, addressed to it by the legislature. If there were no parole and probation commission "created by law", neither the Governor, nor the Governor and Cabinet, as Pardon Board or by any other name, could grant parole in the sense of conditionally excusing a prisoner from further prison service of his sentence but leaving intact the original judgment and sentence. See Sellers v. Bridges, 15 So.2d 293, 295 (Fla. 1943), so defining parole as authorized by the 1940 constitutional amendment and Chapter 947.[12]
We reject the Commission's contention that the 1940 constitutional amendment limited the legislature's power to "creating" the Commission, and withheld power to regulate it. Any executive commission which "may be created by law" may be created on conditions of obedience to laws not inconsistent with the Constitution. The 1941 Legislature, creating the Commission, extensively regulated the Commission and its organization, powers, and duties. The Legislature did not simply call its creature into existence and leave it to operate according to its own inscrutable wisdom  "an administrative Frankenstein, once created, [acting] beyond the control of its Legislature creator."[13] Such a legislative purpose would be "incapable of execution." Marsh v. Garwood, 65 So.2d 15, 21 (Fla. 1953). Legislation forbids the parole of capital felons for 25 years,[14] and that legislation is constitutional,[15] though the legislature could not so constrain the executive's pardon power. The legislature has subjected the Commission to the procedural requirements of Chapter 120, and the Commission in some measure has complied. Sections 947.071, 120.53, Florida Statutes (1977); Fla. Admin. Code Chapter 23-15 (Practices and Procedures), Chapter 23-16 (Parole), Chapter 23-17 (Mandatory Conditional Release).
The Parole and Probation Commission is therefore subject to the open public meetings law, Section 286.011, and it is thereby required to open to the public all meetings at which official acts are to be taken, including meetings to decide issues of parole and MCR revocation. Our decision in State ex rel. Gerstein v. Howard, 334 So.2d 611 (Fla. 1st DCA 1976), cert. den., 341 So.2d 1086 (Fla. 1976), is not to the *155 contrary. That was a decision without opinion in a case which the circuit court decided on procedural as well as substantive points, and in which an affirmance could well have been based on considerations peculiar to that case, not governing this one. See Acme Specialty Corporation v. City of Miami, 292 So.2d 379 (Fla. 3d DCA 1974).
When the Commission met to consider the revocation of Turner's mandatory conditional release, on May 11, 1978, it did so at a meeting not open to the public, press, petitioner, petitioner's counsel, or other interested persons. Its meeting was in violation of Section 286.011, and its decision to revoke Turner's conditional release was "void ab initio." E.g., Town of Palm Beach v. Gradison, 296 So.2d 473, 477 (Fla. 1974). The Commission's orders revoking the release status of the other petitioners were similarly void.
We have considered Judge Booth's dissenting view that the 1978 amendment to Section 947.06, forbidding any grant of parole except by majority vote of the Commission "in a meeting to which the public shall have the right to be present," implies a legislative exemption from Section 286.011, and permission to meet privately, when the Commission meets to deny or revoke parole. The Commission does not suggest such a construction of the 1978 act; and we think it inappropriate and, in any event, foreclosed by the further amendment to Section 947.06 in 1979:
All matters relating to the granting, denying, or revoking of parole shall be decided in a meeting at which the public shall have the right to be present.
The question of remedies remains to be considered. Turner urges that he should be released from confinement and discharged entirely because the Commission's jurisdiction over him terminated on February 9, 1978, when his original sentence would have expired had he not been granted mandatory conditional release. Because the Commission's revocation order was void, he urges, nothing intervened to prevent the expiration of his sentence. Yet clearly his arrest for parole violations, in August 1977, intervened; and notwithstanding the expiration of Turner's original term, the Commission had jurisdiction in May 1978 to enter a proper order in proceedings timely begun during Turner's period of mandatory conditional release, and thereafter timely carried to a conclusion. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Gibbs v. Cochran, 142 So.2d 276 (Fla. 1962). The issue, therefore, is whether constitutional and statutory safeguards standards can now be satisfied, long after Turner was arrested and long after his original sentence would have expired, by an open public meeting and decision of the Commission complying with Section 286.011.
It is not at all obvious that the Commission should now be given the opportunity, in a public meeting, to remake a decision it illegally made many months ago. As a result of illicit private meetings by the Commission, Turner and the other petitioners have spent many months in prison. We must consider whether, by that fact alone, the Commission has acquired an irresistible interest in now validating its prior, void decisions. Section 286.011's requirement of open public meetings rests on the assumption that decisions will be wiser, or will seem to be wiser, if made in public. Certainly it would not do to order or permit the Commission to revoke these paroles offhandedly in a public meeting full of ceremony but without substance. Gradison, 296 So.2d at 477.
In other circumstances the Supreme Court has granted the Commission thirty days to correct prior defects in parole revocation proceedings, although the prisoner was imprisoned throughout the Court's consideration of his petition. Means v. Wainwright, 299 So.2d 577 (Fla. 1974); Demar v. Wainwright, 354 So.2d 366 (Fla. 1978). It is not altogether clear whether the original sentences in those cases would have expired before the Court's decision, had parole not been irregularly revoked. Even assuming that Means, Demar and Gibbs v. Cochran would ordinarily justify allowing the Commission a limited time in which to decide *156 the revocation issues in meetings satisfying Section 286.011, the logistical task is exacerbated by the fact, here represented by Turner's petition, that many others are similarly held in Florida's prisons by virtue of Commission revocation decisions made in meetings violating Section 286.011. We are now holding, pending disposition of these cases, other and similar petitions for habeas corpus by Florida prisoners. Turner's petition requested that we grant relief to the entire class he claims to represent. We initially denied class status to Turner's petition, but we continue to hold that request under consideration on petition for rehearing.
If as Turner says there are numerous prisoners in his circumstances, a decision to deny the class relief would simply flood this court with individual petitions. If the class of affected prisoners is numerous, it may be doubtful that any action required of the Commission concerning them, within a period as short as thirty days, could be more than ceremonial. Conversely, extending the period for Commission compliance would extend a number of illegal imprisonments.
In these cases, therefore, we withhold remedies pending further briefs by the parties. Within twenty days from this date, the Commission will file a further response to Turner's petition for writ of habeas corpus, answering with particularity its allegations in Count II concerning a class of similarly affected prisoners. Within twenty days thereafter the parties will file further briefs on the question of remedies.
It is so ORDERED.
ERVIN, J., concurs.
BOOTH, J., dissents, with an opinion.
BOOTH, Judge, dissenting.
These cases present an attempt to apply Florida Statute § 286.011, The Sunshine Act, to the deliberative processes of the Parole and Probation Commission. This, in my opinion, is an inappropriate extension of the Sunshine Act.
At the outset it must be noted that each petitioner was duly afforded a hearing on the charge of violation of his parole. The correctness of the Commission's determination that each petitioner was in fact guilty of violating his parole is not in question here. Also, no question has been raised by petitioners as to the fairness of the hearings. All fundamental rights were afforded. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); King v. Florida Parole and Probation Commission, 306 So.2d 506 (Fla. 1975). Petitioners' basic contention is that because the deliberations of the Commission were not open to the public the revocations of their parole resulting from those deliberations are void.
There is a serious question as to whether any of the petitioners have standing to challenge the proceedings below on this ground. First, the record does not reveal that there was any request made by any petitioner that the deliberations of the Commission be made public, or that any other objection was made and preserved at the time when the alleged lack of compliance with the Act could have been remedied by the Commission. Failure to comply with the Sunshine Act is not fundamental error and the question must, therefore, be raised where, as here, the facts on which the claim of non-compliance is based were known to petitioners. These petitioners, however, allowed the proceedings to continue without objection, and on receiving the adverse result of the Commission, claim violation of the Sunshine Act.
Another impediment to the raising of the question at this time is the fact that all petitioners were admitted to parole[1] by the Commission after the effective date of the *157 Sunshine Act, in proceedings not in compliance with that Act. If, as petitioners contend, the Sunshine Act applies to the Commission, then their paroles were not validly granted. By petitioners' own argument, their paroles are equally as void as the revocations of those paroles and no basis for complaint exists.
Leaving aside these questions, however, my more basic disagreement with the majority view is the ultimate determination that the Sunshine Act applies to the deliberative process necessary for the exercise of the executive function of parole. There can be no question as to the nature of the ultimate power exercised here under Marsh v. Garwood, 65 So.2d 15 (Fla. 1953), wherein the Supreme Court held that parole is "strictly a function of the executive."
The majority has reasoned, however, that because the Legislature was empowered by the Constitution and did pass the enactments which established the Parole and Probation Commission and has also passed other acts pertinent to the operation of that body, the Commission has been converted into a legislative body and hence subject to the Sunshine Act. By this reasoning, the Fifth District Court of Appeal, recently created by legislative enactment, is also a creature of the Legislature and functions legislatively. Obviously, the great Doctrine of Separation of Powers is not so easily destroyed. Acts of the Legislature describe, define and fund the various functions of other branches of government, but the ultimate power exercised by those branches, including most particularly the decision-making processes of the judicial and executive branches, remain independent.
This Court's decision in Owens v. State, 300 So.2d 70 (Fla. 1st DCA 1974) is not to the contrary. In the Owens case, this Court upheld Florida Statute § 775.082 which requires that one convicted of a capital felony serve a 25-year minimum sentence before becoming eligible for parole. As against the claim that the statute encroached on the power of the executive, we held in Owens that the Legislature was not restricted "from establishing minimum conditions under which parole may be granted," any more than it is precluded from requiring the courts to impose certain minimum sentences. The Supreme Court affirmed that decision in an opinion which recognizes that § 775.082 is a part of the "acknowledged legislative function of prescribing punishments for crimes."[2] The Supreme Court in the Owens opinion notes that the placement of the executive, legislative and judicial functions in the various Articles of the Constitution is functional and does not change the basic nature of the power delegated.[3] The Legislature, in prescribing the minimum sentence requirement, established a line of demarcation between the legislative prerogative to prescribe punishment for crimes and the executive function of parole. That statute and the Owens decisions do not support legislative encroachment on the Commission's deliberations.
The majority relies on this court's opinion in Florida Parole and Probation Commission v. Thomas, 364 So.2d 480 (Fla. 1st DCA 1978) wherein this court correctly held that the decision to take an appeal was not formal action arrived at in a "meeting" of the Commission thereby rendering the Sunshine Act inapplicable. The opinion further contains the following gratuitous statement (364 So.2d at 481):
"[T]he Sunshine Law would apply to all meetings of the Parole and Probation Commission."
Prior to the Thomas decision, this court's affirmance in State ex rel. Gerstein v. Howard,[4] of the well-reasoned decision of the *158 Circuit Court for the Second Judicial Circuit, established that the Sunshine Act did not apply to the Commission. That remained the state of the law until the Thomas decision was rendered May 19, 1978, raising a question as to the applicability of the Act to the Commission. The Legislature's reaction to the dicta in the Thomas decision was a prompt repudiation. The major revision of Chapter 947, reported out of Committee three days prior to the Thomas decision was, after Thomas, recalled to Committee and § 947.06 was amended, effective June, 1978, to add the last two sentences (underscored) pertinent here, as follows:[5]
"Meeting; when commission may act.  The commission shall meet at the call of the chairman and from time to time as may otherwise be determined by the chairman. The formulation and approval of the legislative budget request, the making of recommendations to the Governor and Cabinet in matters of executive clemency and modification of acts and decisions of the chairman as provided in ss. 947.04(1) shall be by a majority vote of the commission. No prisoner shall be placed on parole except as provided in ss. 947.172 and 947.174 by a vote of a majority of the commission in a meeting to which the public shall have the right to be present. Persons not members or employees of the commission may participate in deliberations concerning the granting and revoking of paroles only upon the prior written approval of the chairman of the commission." (e.s.)
Effective May 11, 1979, the Legislature further amended Florida Statutes, § 947.06 (Chapter 79-42, Laws of Florida), to read as follows:
"Meeting; when commission may act.  The commission shall meet at regularly scheduled intervals and from time to time as may otherwise be determined by the chairman. The making of recommendations to the Governor and Cabinet in matters of executive clemency and modifications of acts and decisions of the chairman as provided in s. 947.04(1) shall be by a majority vote of the commission. No prisoner shall be placed on parole except as provided in ss. 947.172 and 947.174 by a panel of no less than two commissioners appointed by the chairman. All matters relating to the granting, denying, or revoking of parole shall be decided in a meeting at which the public shall have the right to be present. Persons not members or employees of the commission may participate in deliberations concerning the granting and revoking of paroles only upon the prior written approval of the chairman of the commission." (e.s.)
Both the 1978 and the 1979 amendments create new procedures which afford members of the public access to meetings on matters relating to parole. The 1979 amendment provides that all such matters "shall be decided" at a meeting in which the public has a right to be present. In both *159 amendments, the Legislature has preserved the distinction between "deliberations"[6] of the Commission and meetings of the Commission at which parole matters are "decided".[7] The deliberations of the Commission are not required to be at meetings, nor is the public entitled to be present. See, Florida Statutes, § 947.23(6). This court must assume that the Legislature adopted the particular wording of a statute advisedly and for a purpose. Lee v. Gulf Oil Corp., 148 Fla. 612, 4 So.2d 868, 870 (Fla. 1941).
The procedures created by the 1978 and 1979 amendments became effective after petitioners' paroles were violated and revoked, and are not applicable. The history and content of these amendments to Chapter 947 repudiate the Thomas case, dicta, supra, and defeat petitioners' contention that the Sunshine Act applies to the Commission.
The Sunshine Act was never intended to apply to the deliberations of the executive or the judicial branches of government. Its extension into those areas is totally unwarranted and violates basic concepts of separation of powers. The purpose of the Act as indicated by the title of Chapter 286, Florida Statutes, "Public Business, Miscellaneous Provision," is to ensure that all public business be conducted in public. Such purpose is to be applauded, particularly as applied to the expenditure of public funds. However, the public interest is ill-served by the majority view which requires wholesale release of persons charged with, and convicted of, parole violations or the re-deliberation of the Commission's admittedly correct determinations at public expense. This is an exercise in futility which serves neither the rights of these petitioners nor the public and is contrary to the intent and purpose of the Sunshine Act.
Petitioners' paroles were revoked in accordance with procedures in effect at the time of their revocation, which procedures complied with all constitutional, statutory and case law requirements.
I respectfully dissent.
NOTES
[1] Section 286.011(1), Florida Statutes (1977):

All meetings of any board or commission of any state agency or authority ..., except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting.
[2] Florida Parole and Probation Comm'n v. Thomas, 364 So.2d 480, 481 (Fla. 1st DCA 1978):

"It is clear that requisite to the application of the Sunshine Law is a meeting of two or more public officials... . It is equally clear that the Sunshine Law would apply to all meetings of the Parole and Probation Commission."
[3] At the time of Turner's mandatory conditional release in April 1976, Section 944.291, Florida Statutes (1975), provided:

(1) A prisoner who has served his term or terms, less allowable statutory gain-time deductions and extra good-time allowances, as provided by law, shall, upon release, be under the supervision and control of the [Department of Offender Rehabilitation] as if on parole, but in no event shall such supervision extend beyond the maximum term or terms for which he was actually sentenced.
(2) The provisions of this section shall not apply to prisoners who, at the time of sentence, could not have earned at least 180 days' gain-time.
Full responsibility under Section 944.291 was once committed to the Parole and Probation Commission, Section 944.291, Florida Statutes (1973); but certain of its functions were transferred to the Department of Offender Rehabilitation by Chapter 75-49, Fla. Laws. See also Chapter 77-120, Section 50, Fla. Laws. The Department is now designated the Department of Corrections. Chapter 78-53, Fla. Laws; Section 944.291, Florida Statutes (1978 Supp.). Section 944.291 was amended in 1978 to allow MCR supervision no longer than "2 years as determined by the Parole and Probation Commission." Chapter 78-223, Fla. Laws.
[4] Section 947.24, Florida Statutes (1977), provides:

In any event, the period of parole shall not exceed the maximum period for which the person has been sentenced.
[5] Davis, Function of the Pardon Board as a Part of Our Legal System, 4 Fla.L.J. 467, 468 (1931), quoting Biddle v. Perovich, 274 U.S. 480, 486, 47 S.Ct. 664, 665, 71 L.Ed. 1161, 1163 (1927):

"We will not go into history, but we will say a word about the principles of pardons in the law of the United States. A pardon in our days is not a private act of grace from an individual happening to possess power. It is a part of the Constitutional scheme. When granted it is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed."
[6] E.g., In re Advisory Opinion of the Governor, 334 So.2d 561 (Fla. 1976); Sullivan v. Askew, 348 So.2d 312 (Fla. 1977).
[7] Clark, Parole in Florida, 11 U.Fla.L.Rev. 68, 71 (1958).
[8] See Vocelle, Two Years of Parole and Probation in Florida, 18 Fla.L.J. 35, 39 (1944):

The provisions of the amendment to the Constitution of Florida, and the laws enacted thereto, give the Parole Commission exclusive power and jurisdiction in the granting of paroles, but do not otherwise abrogate or change the powers of the State Board of Pardons. It must be evident, however, that the operations of the Parole Commission are entirely different from the granting of pardons. The commission does not hold public hearings and no application for parole is necessary to invoke its jurisdiction. It is required that the commission study every individual case coming within its jurisdiction... .
[9] Article IV, Section 12, Fla. Const. (1885):

Pardon board.  The Governor, Secretary of State, Comptroller, Attorney General and Commissioner of Agriculture or a major part of them, of whom the Governor shall be one, may upon such conditions, and with such limitations and restrictions as they may deem proper, remit fines and forfeitures, commute punishment and grant pardon after conviction, in all cases except treason and impeachment subject to such regulations as may be prescribed by law relative to the manner of applying for pardons.
[10] Section 947.24, Florida Statutes (1941) had provided that no parolee "shall be discharged ... by the commission prior to the expiration of the term for which he was sentenced, or until he shall have been duly pardoned ..." That was held to mean, unambiguously, "that the jurisdiction of the parole commission to revoke is measured by the time of the original sentence... ." Easterlin v. Mayo, 69 So.2d 181, 182 (Fla. 1954). Chapter 63-83, Fla. Laws, codified that decision:

When a person is placed on parole the commission shall determine the period of time the person shall be on parole, and such time shall not exceed [a] maximum term for which he has been sentenced.
[11] Owens v. State, infra n. 15, 316 So.2d at 538, fn. 4.
[12] The Court stated:

Parole, therefore, is not an act of amnesty or forgiveness  as some suppose. It does not put an end to sentence legally imposed. Rather, it is a continuation of sentence... The Florida Parole Commission is given statutory authority to determine the terms and conditions under which the prisoner may secure parole. Once secured, and upon the terms and conditions imposed by the Commission, prisoners become parolees (trustees outside prison walls, as it were) but prisoners amenable to discipline, direction, and supervision of prison system officials none the less.
[13] Cf. City of Cape Coral v. GAC Utilities, Inc. of Florida, 281 So.2d 493, 496 (Fla. 1973).
[14] Section 775.082(1), Florida Statutes (1977):

A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole [unless a death sentence is imposed].
[15] Owens v. State, 316 So.2d 537 (Fla. 1975); Owens v. State, 300 So.2d 70 (Fla. 1st DCA 1974); app. dism., 305 So.2d 203 (Fla. 1974).
[1] The Sunshine Act was effective September 12, 1967. The record does not indicate dates of any hearings other than that of petitioner Turner on May 5, 1978. Dates of orders of parole and revocation of parole of petitioners are as follows:

 PAROLED REVOKED
 Turner 4/ 1/76 5/11/78
 Brooker 7/25/74 7/14/75
 Bailey 4/20/71 5/ 6/76
 Haddon 4/20/76 9/ 2/78

[2] Owens v. State, 316 So.2d 537, 538 at note 6 (Fla. 1975).
[3] Id. at note 4.
[4] In State ex rel. Gerstein v. Howard, 334 So.2d 611 (Fla. 1st DCA 1976), cert. denied 341 So.2d 1086 (Fla. 1976), this court affirmed without opinion the order of the Circuit Court, Leon County, the Honorable Donald O. Hartwell, presiding, as follows:

"Basically, the question before this Court is whether the investigative records, discussions and meetings of the Defendant Commission in the determination and granting of paroles is subject to Section 286.011, Florida Statutes, commonly referred to as the Government in the Sunshine Law.
Were this Court to grant the relief requested it would in effect invalidate every parole in this State granted under similar circumstances ...
* * * * * *
The Legislature certainly possesses a broad area of power with respect to paroles. However, when acting in the exercise of its constitutional responsibility its [Commission's] power is full and complete.
It is the opinion of this Court that the Parole and Probation Commission, forming a part of the Executive Branch of Government, is not subject to the Government in the Sunshine Law under the clear exception provided in such law when exercising its constitutional power..."
[5] On May 16, 1978, a House and Senate Conference Committee reported out of committee House Bill 936 (78-417; Laws of Florida), a major revision of Chapter 947, Florida Statutes, regulating the Parole and Probation Commission.

Three days later, on May 19, 1978, this Court handed down its decision in Florida Parole and Probation Commission v. Thomas, 364 So.2d 480 (Fla. 1st DCA 1978). On June 2, 1978, the conference committee recalled the Bill which had then passed the House and was under consideration in the Senate. The Bill was amended, reported out of committee, and passed as amended to read as quoted above in the opinion, with the underscored sentences added.
[6] Deliberation: "The act of weighing and examining the reasons for and against a choice or measure ...; a discussion and consideration by a number of persons of the reasons for and against a measure  often used in plural ..." Webster's Third New International Dictionary, Unabridged, at 596.
[7] Decide: "to come to a decision, presumably after some consideration, ... [the time for deliberation is then passed, he has decided  John Marshall]." Webster's Third New International Dictionary, Unabridged, at 585.